726 So.2d 1126 (1999)
STATE of Louisiana
v.
Charles H. JOHNSON.
No. 97-KA-1519
Court of Appeal of Louisiana, Fourth Circuit.
January 27, 1999.
*1128 Harry F. Connick, District Attorney of Orleans Parish, Susan Erlanger Talbot, Assistant District Attorney, New Orleans, Louisiana, Counsel for The State of Louisiana/ Appellee.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge MIRIAM G. WALTZER, Judge JAMES F. McKAY III, Judge Pro Tempore JAMES C. GULOTTA.
JAMES C. GULOTTA, Judge Pro Tem.
The defendant was convicted of two counts of aggravated rape upon E.G. and C.G., victims who were under twelve years old.[1] La. R.S. 14:42(A)(4). He was also convicted of one count of aggravated crime against nature upon E.G, La. R.S. 14:89.1. The trial judge sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for each count of aggravated rape and fifteen years at hard labor without benefit of parole, probation, or suspension of sentence for the aggravated crime against nature. All sentences were ordered consecutive.
Defendant argues the evidence was insufficient to convict on the aggravated crime against nature on E.G. (the older child) and the aggravated rape of C.G. (the younger child). He also argues that the trial court improperly allowed the jury to examine written evidence during deliberations.
We hold the evidence was insufficient to convict defendant of aggravated crime against nature and we reverse that conviction and sentence. We further hold the evidence was sufficient to convict defendant of the aggravated rape of C.G. Further, although the trial judge erred by allowing the jury to view written evidence during deliberations, that error was harmless. We affirm defendant's convictions and sentences for aggravated rape of E.G. and C.G.

Facts
The victims in this case were ten and thirteen years old at the time of trial on November 20, 1996. Phyllis Varnell works for the New Orleans Police Department in child abuse investigations. In January 1995 Varnell received a report of child abuse in the victims' family. She met with the victims, E.G. and C.G., their mother, and medical personnel. Varnell testified that E.G. and her mother were emotionally distraught. After the interviews, Varnell and Detective Darryl Smith arrested the defendant on January 25, 1995.
The victims' mother, Debra, testified that she met the defendant in October 1983 and they moved in together. E.G. was Debra's child from another man, and C.G. was the child of Debra and the defendant. Debra testified that she and the defendant were security guards for the same company and they worked different shifts. The defendant watched the children while Debra worked.
Debra testified that while doing laundry she noticed stains on one of the victims' underwear. She questioned E.G. and learned that the underwear belonged to C.G., E.G.'s younger sister. Debra asked C.G. about the stains. C.G. denied that she had contact with boys and told Debra that she was experiencing burning (apparently in her genital region). Debra gave C.G. fresh underwear and powdered the area. Later C.G. complained of burning, and Debra took her to Charity Hospital for a physical exam and tests. C.G. tested positive for gonorrhea.
E.G. and the victims' brother were taken to Charity for tests. E.G. cried during her *1129 exam and also tested positive for gonorrhea. Debra testified that she asked E.G. if anyone had touched her, and E.G. told her that the defendant had. Debra said that E.G. told her the defendant had put his mouth "down there." C.G. told Debra that she thought the defendant had raped her.
Debra tested negative for gonorrhea. She remembered that the defendant previously complained of "itching." She testified that the children loved the defendant and were close to him. Before the children tested positive for gonorrhea, Debra had no indication that there was a problem.
Dr. Mary Louise Seymour, an emergency room physician at Charity, testified that she examined C.G. in January 1995. C.G. had a vaginal discharge, redness, and swelling. Dr. Seymour suspected that C.G. had developed an infection from a foreign body such as toilet tissue in her vagina. She explained that a child who feels irritation when urinating generally rubs the area with toilet tissue. Dr. Seymour testified that tissue was removed from C.G.'s vagina on January 17, 1995. A culture disclosed that C.G. had gonorrhea. Dr. Seymour testified that in a subsequent examination a portion of C.G.'s vaginal wall had eroded and looked like it had been torn in the past. She explained that C.G.'s injury was to the opening of the vagina, "also called the hymen." Dr. Seymour concluded "that it had probably been torn in the past and this is a scar." The vaginal opening was larger than expected in a child C.G.'s age.
Dr. Michelle Flechas, a pediatric resident at Louisiana State University Medical School, testified that she examined C.G., E.G., and their brother on January 20, 1995, after C.G. had tested positive for gonorrhea. She did not perform a pelvic exam on C.G. because one had been performed previously. Dr. Flechas said that C.G. did not talk, was extremely scared, nervous, and withdrawn, common responses for a sexually abused child. Dr. Flechas corroborated that E.G. had a vaginal discharge.
Dr. Flechas said that E.G.'s hymen was not intact. Dr. Flechas did not notice any lacerations or tears. E.G. repeatedly denied to Dr. Flechas that anyone had touched her. Dr. Flechas testified that specimens taken from E.G.'s vagina and anus were positive for gonorrhea. When Dr. Flechas told E.G. that she had gonorrhea, E.G. cried and spontaneously told Dr. Flechas that the defendant was the perpetrator.
Dr. Flechas testified that the only way to contract gonorrhea is sexually. She said that the disease could be transmitted if someone placed his penis on the outside of a female's vagina or if someone partially inserted his penis into a vagina. An asymptomatic carrier can transmit the disease. Symptoms usually appear in two to six weeks.
Dr. Flechas also stated there was no indication that the two rapes occurred within seventy-two hours of the initial exam, though she would not necessarily be able to determine the time of the offense.
E.G. was thirteen years old at the time of trial, twenty-two months after the first report of abuse. She testified that when she went to the hospital she told the doctor that the defendant was the perpetrator. E.G. testified that the defendant had molested her, had pulled down her clothes and "messed" with her. She said that he tried to put his penis in her vagina and that it hurt. E.G. did not specify the date of the offense but she testified that it occurred when she was in the third grade and more than once. E.G. said it happened in her room, her brother's room, and her mother's room. E.G. said the defendant's penis went into her vagina "a little bit." She said she did not tell her mother because she was afraid of the defendant. E.G. testified that the defendant did not do anything with his mouth and did not "put his mouth down there."
C.G. was ten years old at the time of trial. C.G. testified: "I had a dream  I don't know if it's a dream or it's not a dream. He had on a black like a ninja outfit, and he came in the room [her sister's bedroom], and he climbed on top of me." C.G. said she was wearing a nightgown. The defendant pulled her clothes half off and removed his pants.
*1130 He tried to put his "privacy part" into her and he moved around, which she said did not "feel nice." C.G. said she did not tell anyone about the "dream" until she went to the hospital, where she told her mother. C.G. said that she slept with her sister E.G., but she did not recall if E.G. was in the bed with her at the time of the offense. C.G. said her brother was away at boy's club at the time of the offense.
C.G. did not remember if the incident occurred during the day or night. She did not recall the month of the incident. She said she did not tell her mother because she could not remember if the incident happened or not. C.G. testified that no one except her father did this to her.
Dang Ngo, a chemist for the City of New Orleans, testified that he took specimens from the defendant's urethra on January 24, 1995. Ngo visually examined the defendant and did not see a discharge, warts, lesions, a rash, or lice.
Barbara Peltier, supervisor for the Bacteriology Section for the State Health Department and expert in bacteriology, testified that she examined the defendant's specimens and he tested positive for gonorrhea.
Gail Collins, Administrator of Delgado Clinic and custodian of records, testified that the defendant tested positive for gonorrhea and Debra was negative.
Dr. Suzanna White-Sims, expert in general medicine, pediatric medicine, emergency room medicine, and the diagnosis and treatment of child abuse, testified that child abuse victims frequently do not immediately report the abuse. They are often afraid or threatened, and feel that they will be punished or that they are protecting a family member. Dr. White-Sims testified that abused children often forget details. She said that gonorrhea requires sexual exposure but not penetration. In female children who are not sexually active, the hymen usually is not broken.
The defendant testified that he lived with Debra and her children from 1991 until January 1995. He said that during their twelve year relationship, which began in September 1983, he and Debra broke up several times and other men lived with her. Defendant denied having a sexual relationship with E.G. and C.G. He claimed that when C.G. had problems, Debra attempted to clean C.G.'s insides and was rough, which might have torn C.G.'s hymen. Defendant said that he has no symptoms of gonorrhea and has not been treated for the disease. He said that the doctors told him he tested negative.
On rebuttal, Debra denied that she tried to remove toilet tissue from C.G.'s vagina. She also said she was present when the defendant was tested for gonorrhea, and no one told him that he tested negative.

Sufficiency of Evidence  Aggravated Crime Against Nature
Defendant argues the evidence was insufficient to convict of aggravated crime against nature perpetrated upon E.G. He argues that the only evidence of the crime was hearsay, which was insufficient to support the conviction even though there was no contemporaneous objection. That assignment has merit.
This Court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Circumstantial evidence is proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372, 378 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but is an evidentiary guide for the jury and facilitates appellate review. State v. Wright, 445 So.2d 1198, 1201 (La. 1984).
Crime against nature is the unnatural carnal copulation by a human being with another *1131 of the opposite sex. La. R.S. 14:89. Emission is not necessary; and when committed by a human being with another, the use of the genital organ of one of the offenders is sufficient. Id. Aggravated crime against nature is a crime against nature committed when the victim is under the age of seventeen and the offender is at least three years older than the victim. La. R.S. 14:89.1(A)(6).
The indictment charges that between June 1991 and January 17, 1995, the defendant placed his mouth upon E.G.'s vagina, and that she was under seventeen years old and at least three years younger than the defendant.
The age element was proven. E.G. was thirteen at the time of trial on November 20, 1996, twenty-two months after the offense was reported. The defendant was forty-six at the time of trial.
However, E.G. testified that the defendant did not put his mouth "down there." The prosecutor then asked, "You don't remember that?" E.G. did not respond. Later in the trial, the prosecutor questioned Debra about E.G.'s first report of the crime. Debra testified without objection that E.G. told her the defendant "did put his mouth down there." There is no other evidence of oral sex.
Hearsay is generally inadmissible. See La. C.E. art. 802. A statement is not hearsay if the declarant testifies at trial subject to cross-examination and the statement is consistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior. La. C.E. art. 801(D)(1)(d). Although E.G. testified at trial subject to cross-examination and the statement that she made to her mother was an initial complaint of sexually assaultive behavior, the child's statement (to her mother) was inconsistent with her testimony. Therefore, it is not covered by Art. 801(D)(1)(d).
La. C.E. art. 804(B)(6) provides that a statement is not excluded by the hearsay rule if the declarant was unavailable as a witness and the statement was made by a person under the age of twelve and was one of initial or otherwise trustworthy complaint of sexually assaultive behavior. E.G. was available and did testify as a witness. She denied that the defendant committed an oral sexual offense. Therefore, Art. 804(B)(6) does not apply.
E.G.'s statement to her mother was not an excited utterance. La. C.E. art. 803(2) provides that a statement relating to a startling event or condition is not excluded by the hearsay rule if it was made while the declarant was under the stress of excitement caused by the event. The exception requires an event sufficiently startling to render the declarant's normal reflective thought process inoperative, and the statement must have been a spontaneous reaction to the event. State v. Jasper, 28,187, p. 11 (La.App. 2 Cir. 6/26/96), 677 So.2d 553, 563, writ den. 96-1897 (La.2/21/97), 688 So.2d 521. The most important factor is time. Id. at p. 12, 677 So.2d at 563. Although aggravated crime against nature would have been so startling as to render E.G.'s normal reflective thought process inoperative, nonetheless, the record contains no evidence that the aggravated crime against nature was perpetrated within days or even months of the initial report to E.G.'s mother. E.G. testified that the defendant "messed" with her when she was in the third grade and other unspecified times. The testimony establishes that during that period, E.G. had an outwardly normal relationship with the defendant. The record does not support application of the excited utterance exception to the hearsay rule.
Ordinarily, hearsay evidence that is not objected to constitutes substantive evidence. State v. Lubrano, 563 So.2d 847, 849 (La.1990); State v. Allien, 366 So.2d 1308, 1311 (La.1978). However, the Supreme Court reversed the conviction in Lubrano and Allien, where hearsay was the only evidence of the defendant's guilt and was "much too unreliable to serve as the exclusive evidence prompting the defendant's conviction simply on the strength of his failure to lodge *1132 a contemporaneous objection." State v. Lubrano, 563 So.2d at 849, quoting State v. Allien, 366 So.2d at 1311.
Applying Lubrano and Allien to our case, where E.G.'s testimony was inconsistent with her prior out of court statement, the hearsay statement of E.G.'s mother concerning E.G.'s initial report of the sexual assault cannot, in itself, support the defendant's conviction. Therefore, we reverse the conviction for aggravated crime against nature perpetrated upon E.G.

Sufficiency of Evidence - Aggravated Rape
Defendant argues the evidence was insufficient to convict of aggravated rape of C.G. because C.G. testified that she did not know whether "it's a dream or it's not a dream." That argument has no merit.
La. R.S. 14:42(A)(4) defines aggravated rape as a rape "where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed ... (w)hen the victim is under the age of twelve years."
C.G. was ten years of age at the time of trial. The child testified that the defendant was the only person who had climbed on top of her and tried to insert his penis into her vagina. C.G.'s mother testified that C.G. thought the defendant had raped her. Dr. Seymour examined C.G. in January 1995 and said that C.G. had a vaginal discharge, redness and swelling. Dr. Seymour examined C.G. again and noted that a portion of her vaginal wall or hymen had "eroded" and looked as though it was previously torn. Also, C.G.'s vaginal opening was larger than expected in a child her age. A culture revealed that C.G. had gonorrhea. The defendant tested positive for gonorrhea. The testimony established that the only way to contract gonorrhea is by sexual contact. Dr. White-Sims, expert in the diagnosis and treatment of child abuse, testified that abused children often forget details.
Considering the evidence in the light most favorable to the prosecution, we hold that the evidence was sufficient to convict of the aggravated rape of C.G.

Evidence During Deliberations
The defendant argues the trial judge erred by allowing the jury to examine, during deliberations, the medical records of the defendant, the children, and the children's mother. This assignment of error has no merit.
The medical records include the lab results for the defendant and the victims' mother, as well as the children's emergency room/clinic records. Defense counsel did not object to admission of the documents into evidence, but objected to the documents being submitted to the jury during deliberations. The trial judge overruled the objection, reasoning that the jury could view the evidence because it did not so do from the jury box in the courtroom.
La.C.Cr. P. art. 793 prohibits the use of written evidence in the jury room. It provides:
Art. 793. Use of evidence in jury room; reading of recorded testimony
A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
The general rule is that the jury is not to inspect written evidence except for the sole purpose of a physical examination of the document itself to determine an issue which does not require the examination of the verbal contents of the document. State v. Perkins, 423 So.2d 1103, 1109-1110 (La.1982). A jury can examine a written statement to ascertain or compare a signature or to see or feel it with regard to its actual existence, but not to examine its verbal contents. Id. *1133 The Supreme Court explained the purpose behind Art. 793:
The policy choice thus represented is to require jurors to rely on their own memory as to verbal testimony, without notes and without reference to written evidence, such as to depositions or transcribed testimony. The general reason for the prohibition is a fear that the jurors might give undue weight to the limited portion of the verbal testimony thus brought into the room with them.
Id. at 1110, quoting State v. Freetime, 303 So.2d 487, 488-89 (La.1974).
Louisiana courts have reversed many convictions where the jury viewed a defendant's confession or written statement or re-examined verbal testimony during deliberations. State v. Adams, 550 So.2d 595 (La.1989) (jury reviewed defendant's confession to police); State v. Perkins, supra (conviction for first degree murder reversed based on a Brady violation and because during deliberations the jury examined the defendant's written statement); State v. Buras, 459 So.2d 756 (La.App. 4th Cir.1984) (aggravated kidnapping reversed because during deliberations the jury was given a transcript of recorded telephone calls between the kidnappers and the victim's family); State v. Gracia, 527 So.2d 488 (La.App. 5th Cir.1988) (jury reviewed the defendant's written statements). Gracia noted that prejudice was presumed, quoting State v. Freetime, 303 So.2d at 489.
The First Circuit examined two cases involving medical records. State v. Pooler, 96 1794 (La.App. 1 Cir. 5/9/97), 696 So.2d 22, writ den. 97-1470 (La.11/14/97), 703 So.2d 1288; State v. Ray, 577 So.2d 354 (La.App. 1st Cir.), writ den. 580 So.2d 668 (La.1991).
State v. Ray held that the trial court properly disallowed the jury's examination of medical records during deliberations in a forcible rape case.
In State v. Pooler, supra, the defendant was convicted of second degree murder. On appeal he argued the trial court erred by allowing the jury to view during deliberations the results of DNA tests. The appellate court held there was no error because the evidence was not testimony or written evidence excluded by Art. 793. Rather, it consisted of photographs of actual test results in blue dot formation and of a chart.
The evidence in the instant case consists of medical records with notations stating whether various tests were positive or negative, not physical representations of the gonorrhea culture or other actual test results. Thus, it appears that Pooler is distinguishable.
Under Art. 793 and the jurisprudence cited above, we conclude the trial judge erred by allowing the jury access to the written evidence during deliberations. However, our analysis does not end with that determination.
We have not found any reported case that specifically holds that the harmless error doctrine applies and that a violation of Art. 793 constitutes harmless error. State v. McCully, 310 So.2d 833 (La.1975), reversed a conviction for possession of marijuana because the trial judge permitted a tape of a chief prosecution witness to be repeated to the jury. McCully explained that Art. 793 effectuates a legislative prohibition against "re-reading of recorded testimony," id. at 834, and against "jury re-examination of trial evidence," id. at 835. The Court held that the error was not harmless because it was a substantial violation of defendant's statutory right and was prejudicial.
However, one Supreme Court case leaves open the question of whether a violation of Art. 793 under some circumstances is subject to harmless error analysis. In State v. [Saul] Johnson, 541 So.2d 818 (La.1989),[2] the defendant was convicted on two counts of first degree murder. One assignment on appeal was that the trial court erred by allowing the jury to review certain exhibits during deliberations: the autopsy report on *1134 each victim, the crime lab report, and municipal court documents that contained one victim's request for a peace bond against the defendant. The Supreme Court held that the trial court erred by allowing the jury to examine the documents during deliberations. The Court acknowledged jurisprudence that reversed convictions based on a violation of Art. 793. The Court then suggested that such error might not necessitate reversal, but the Court did not reach the issue because it reversed defendant's convictions on other grounds. The Court stated:
This error may have been inconsequential with regard to the autopsy and crime lab reports, as those documents, although necessary to the prosecution's case, were not directly pertinent to the issue of this defendant's guilt or innocence. The court documents from the municipal court peace bond proceeding, however, contained an affidavit in which the victim asserted that defendant had attempted to seriously harm her shortly before the murder. Certainly this is the kind of written document which should not be examined for its verbal contents under the rule provided by Art. 793, a rule which presumes that the jury will give undue weight to any written exhibit which it examines for its verbal contents during deliberations.
Because we have independently concluded that the prosecutor's reference to the defendant's failure to take the stand requires the reversal of both convictions, it is unnecessary for us to determine whether the violation of Art. 793, standing alone, warrants reversing defendant's convictions.

Id. at 824-25.
State v. [Saul] Johnson did not involve re-examination by the jury of verbal testimony or the defendant's statement, but rather, documentary evidence. While the Supreme Court did not reach the issue, it clearly considered that such a violation of Art. 793 might not require reversal.
Louisiana's harmless error rule has been re-examined and refined since McCully and Johnson. Under La.C.Cr.P. art. 921, an appellate court shall not reverse a judgment because of any error "which does not affect substantial rights of the accused." Whether substantial rights of the accused were violated is determined under federal harmless error standards, i.e., whether the guilty verdict in this trial was surely unattributable to the error. State v. [Silas] Johnson, 94-1379, p. 14 (La.11/27/95), 664 So.2d 94, 100, citing Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). [Silas] Johnson distinguished between "trial errors," which may be reviewed for harmless error, and "structural errors," which defy analysis under the harmless error doctrine. Johnson at p. 14, 664 So.2d at 100, citing Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).
The Court stated that trial error is error which occurs during presentation of the case to the trier of fact and may be quantitatively assessed in the context of the other evidence. State v. Johnson, at p. 15, 664 So.2d at 101. The Court further explained:
A structural error is one which affects the framework within which the trial proceeds.... Structural defects include the complete denial of counsel...; adjudication by a biased judge....; exclusion of members of defendant's race from a grand jury ...; the right to self-representation at trial ...; the right to a public trial ...; and the right to a jury verdict of guilt beyond a reasonable doubt ....
Id., at pp. 14-15, 664 So.2d at 101 [citations omitted].
We conclude based on these cases that, although Art. 793's prohibition is explicit, violation of that article does not mandate reversal. Rather, the erroneous presentation of written, documentary evidence to the jury during deliberations is trial error that can be quantitatively assessed in the context of other evidence, and therefore is subject to harmless error analysis.
As in State v. [Saul] Johnson, supra, the documents that the jury viewed during deliberations were not transcriptions of verbal testimony or statements by the *1135 defendant. Rather, they were medical records showing that the victims and the defendant were tested for gonorrhea. Additionally, this case is different from any that we examined in that the evidence was admitted without objection, and the jury viewed the documentary evidence for the first time during deliberations. Just before the state rested its case, the trial judge stated:
All right. Mr. Davis, publish the exhibits to the jury. Ladies and Gentlemen, we're going to  I'll tell you what[,], let's not do that. I'll let you look at those exhibits in the jury room.
The defendant did not object at that time. The trial judge later said that was to "save time." There is no indication in the record that the jury viewed the exhibits from the jury box during trial. Thus, the jury did not re-examine or re-read evidence when it viewed the documents during deliberations.
Considering those facts in light of all the evidence presented in this case, we are convinced that the guilty verdict was unattributable to the trial error and the violation of Art. 793 was harmless.
For the reasons assigned, we reverse the defendant's conviction and sentence for aggravated crime against nature perpetrated upon E.G. We affirm the defendant's convictions and sentences for aggravated rape of E.G. and C.G.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] Initials are used to protect the identity of the victims. E.G. was eleven years of age or younger at the time of the offense; C.G. was eight years of age.
[2] We include the defendant's first name in the citation to distinguish another Johnson case cited infra and to distinguish the defendant in the instant case.