742 So.2d 896 (1999)
STATE of Louisiana, Appellee,
v.
Alvin BRATTON, Appellant.
No. 32,090-KA.
Court of Appeal of Louisiana, Second Circuit.
June 16, 1999.
*897 Darien D. Lester, Shreveport, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, D. Bruce Dorris, Catherine M. Estopinal, Assistant District Attorneys, Counsel for Appellee.
Before WILLIAMS, STEWART and PEATROSS, JJ.
STEWART, J.
The defendant, Alvin Bratton, was convicted of second degree murder, a violation of La. R.S. 14:30.1, and sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Urging three assignments of error, the defendant now appeals. We affirm.

FACTS
On January 20, 1995, the defendant along with Michael Cooks ("Cooks"), Justin Griffin ("Griffin"), Eric Williams ("Williams"), and Victor "Slap" Norris ("Norris") left a party to rob a house for the purpose of obtaining marijuana. The defendant and the four other individuals were members of the "Wilkinson Terrace Boyz," a gang associated with the "Rolling 60's Crips." The robbery occurred at the residence of Jamal Johnson ("Johnson") located at 3526 Darien Street in Shreveport, Louisiana. Johnson was not home at the time; however, Joseph "Joe" Frazier ("Frazier"), Carlos Bryant ("Bryant"), and Ronald Ford ("Ford") were in Johnson's house.
When the defendant and his cohorts reached the Johnson residence, they knocked on the front door and were directed by Bryant, who knew Cooks, to go around to the back door. The defendant and his cohorts, all of whom were armed, entered through the back of the house, brandished their weapons, and demanded *898 to know where the drugs were located as Cooks placed a gun to Bryant's head. Bryant, Ford, and Frazier were taken to different rooms. A padlocked bedroom door was kicked down. The defendant and his cohorts searched the house for drugs and robbed Bryant and Ford. After someone directed Bryant to lie on the kitchen floor, he was shot five times. Ford, who was robbed of twenty dollars, was also shot multiple times after a brief struggle. Both Ford and Bryant survived. Frazier was shot fourteen times and died. While hospitalized for their gunshot injuries, both Ford and Bryant were able to pick the defendant from a photographic line-up and to identify him as one of the participants in the robbery and murder.
James Ford, the brother of Ronald Ford, lived in a garage apartment behind the Johnson residence and was home at the time of crime. James Ford heard the gunfire but believed it to be the sound of hammering. A motion sensor light, which James Ford had installed the day before, was triggered as the defendant and the others left the Johnson residence. James Ford saw the defendant leaving the crime scene carrying two firearms. He subsequently identified the defendant in a photographic line-up and at trial.
Upon learning that a warrant was out for his arrest, the defendant turned himself in to the police. At trial, the defendant denied any involvement in the crime. He testified that he accompanied Cooks, Williams, Norris, and Griffin to Darien Street, but waited at a neighbor's house while the others went to the Johnson residence to get some marijuana. According to the defendant, he realized that the others were gone for a long period of time and decided to look for them to ensure that they were not smoking all of the marijuana without him. As he walked down Darien Street, he heard gunfire and saw his group running. Although he did not know why the others were running, the defendant joined them.
The defendant also testified about a use immunity statement he gave to the district attorney's office in which he admitted his participation in the crime. The defendant denied the truthfulness of the statement and attempted to prove that he was coerced into giving the statement by his former counsel and the district attorney's office for its use at the trial of Michael Cooks. The defendant testified that he was promised a plea bargain in exchange for his false statement.
The defense called John Michael McDonald ("McDonald"), the defendant's former counsel, and Mike Pitman ("Pitman"), a former assistant district attorney for Caddo Parish, as witnesses regarding the defendant's prior statement. Both McDonald and Pitman testified that no one asked the defendant to give a false statement. After the defendant waived attorney-client privilege, McDonald testified that the statement given by the defendant was substantially the same as the story that the defendant had told him concerning the events of January 20, 1995. Pitman testified that the defendant provided information in his statement that was outside the scope of the information included in the police report. This information pertained to the identification of a participant in the crime who had not yet been identified by the police. Pitman also testified that the defendant decided not to testify at Cooks' trial, but that Cooks was nevertheless convicted of first degree murder and sentenced to death for his participation in the robbery and murder.
At trial, the defendant's claim that he was not involved in the crime was further contradicted by the testimony of Eric Williams, a co-defendant. Williams testified that the defendant had a weapon and participated in the armed robbery. Williams had previously pled guilty to armed robbery for his own involvement in the crime.
After the two day trial, the jury found the defendant guilty of second degree murder. The district court then sentenced the *899 defendant to life imprisonment without benefit of probation, parole, or suspension of sentence. In the instant, appeal the defendant urges three assignments of error.

FIRST ASSIGNMENT OF ERROR
The defendant first asserts that the trial court erred in overruling his objection to the state's questions regarding prior arrests. On cross-examination, the state questioned the defendant about arrests in 1993 and 1994, as well as about a battery incident that occurred at the Caddo Correctional Center ("CCC") where the defendant was incarcerated while awaiting trial. The defense objected to this line of questioning on the basis that none of the incidents resulted in convictions. The state countered that the defendant "opened the door" by testifying on direct examination that he had never been in trouble. The defense requested neither a mistrial nor an admonition to the jury pursuant to La.C.Cr.P. arts. 770 or 771. The defendant now argues that the testimony regarding his arrests and disciplinary problems at CCC severely prejudiced the jury against him.
Evidence of other crimes is generally inadmissible in the guilt phase of a criminal trial unless its probative value outweighs its prejudicial effect and unless other safeguards are met. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, reconsideration denied, 94-1379 (La.4/8/96), 671 So.2d 332. A statutory exception to this general rule is set forth in La. C.E. art. 609.1, which allows evidence of prior criminal convictions for impeachment purposes but disallows inquiry into matters for which there has only been an arrest. A jurisprudential exception also exists for instances in which the defendant chooses to testify. In such instances, the state is not precluded from contradicting the defendant's testimony on an issue which the defendant himself brought into the case. State v. Richard, 550 So.2d 300 (La.App. 2nd Cir.1989); State v. Cotten, 438 So.2d 1156 (La.App. 1st Cir. 1983), writ denied, 444 So.2d 606 (La. 1984).
Furthermore, even when other crimes evidence is improperly admitted at trial, the erroneous admission is a trial error and is subject to the harmless error analysis on appeal. State v. Johnson, supra; State v. Ingram, 29,172 (La.App. 2nd Cir. 1/24/97), 688 So.2d 657, writ denied, 97-0566 (La.9/5/97), 700 So.2d 505. Trial error is harmless where the verdict rendered is "surely unattributable to the error." Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Ingram, supra.
In the instant case, the defendant "opened the door" to cross-examination about his criminal past when he voluntarily testified on direct examination that he had never been in trouble before. Having provided testimony suggesting a clean criminal history, the defendant subjected himself to cross-examination regarding his criminal history. However, the defendant's testimony that he had never been in trouble before pertained specifically to his criminal past before his arrest on the instant charge. Thus, the state's cross-examination as to a battery incident which occurred in 1998, after the defendant was jailed for the instant offense, resulted in the erroneous admission of other crimes evidence. It is therefore necessary to determine whether this erroneous admission of evidence is harmless error.
The state presented four eyewitnesses who identified the defendant as one of the participants in the robbery and murder. Eric Williams, a co-defendant, testified that the defendant knew of the robbery plan before they reached the Johnson residence and was present during both the robbery and the murder. The two surviving victims, Carlos Bryant and Ronald Ford, testified that the defendant was armed with a weapon when he entered the house. James Ford testified that he heard the gunfire and that he saw the defendant *900 carrying a weapon and leaving the Johnson residence with others. The jury also heard evidence that the defendant made a statement admitting that he knew of the robbery plan, that he entered the Johnson residence armed, that a murder occurred while he was present, and that he ran from the residence with others after the robbery and murder. Additionally, the trial court gave the following instruction on the issue of past criminal history:
Any evidence and any reference that the defendant has a previous arrest for an offense or offenses other than the offense for which he is on trial is to be considered only for a very limited purpose. The sole purpose for which such references or evidence may be considered is for evaluation of the defendant's credibility with particular respect to his testimony that he had not been in trouble before. References to previous arrests does not mean the witness is not telling the truth. It is a circumstance which you may consider in particular regard to the defendant's statement and you may give it the limited weight, if any, that you believe it deserves.
Considering not only the overwhelming evidence of the defendant's guilt, but also the appropriately restrictive jury instruction given by the trial court on the issue of past criminal history, we find that the verdict rendered in this matter is surely unattributable to the erroneous admission of any other crimes evidence. The abundance of eyewitness testimony as well as the defendant's own prior statement regarding his involvement in the crime provide a more than adequate basis for the jury's guilty verdict. This assignment of error is without merit.

SECOND ASSIGNMENT OF ERROR
In his second assignment of error, the defendant asserts that the trial court erred in overruling his objection to Mike Pitman's testimony on cross examination by the state regarding information contained in letters written by co-defendant Michael Cooks. The defendant argues that testimony regarding Cooks' letters constitutes improperly admitted hearsay testimony.
Pitman, a former assistant district attorney for Caddo Parish and the lead prosecutor for the Michael Cooks' case, was called as a witness for the defense. After the defendant testified that his former counsel and the district attorney's office coerced him into giving a false statement for use in Michael Cooks' trial, the defendant's former counsel and Pitman were called by the defense to testify. On cross-examination by the state, Pitman was asked whether the defendant in giving his statement appeared to know more information than what was included in the police report. Pitman explained that the defendant named a fifth individual, Victor "Slap" Norris, as a participant and that the police had not yet identified Norris as a participant. Pitman referred to letters written by Michael Cooks and introduced into evidence during Cooks' trial in which Cooks named "Slap" as one of the participants in the crime. The defendant's statement confirmed that "Slap" was Victor Norris. The defendant's counsel objected to the mention of Cooks' letters, arguing that the letters were not introduced into evidence and that the defense would be unable to examine Pitman about the letters without having them. The objection was treated as a hearsay objection and overruled.
"Hearsay" is a statement other than one made by the declarant while testifying at the present trial or hearing offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C). Hearsay evidence is regarded as being unreliable because it is based on statements made by persons who are not before the court, have not been sworn, and are not available for cross-examination. State v. Tate, 25,765 (La.App. 2nd Cir. 2/23/94), 632 So.2d 1213, writ denied, 94-1218 (La.8/23/96), 678 So.2d 33. By definition, a statement not introduced to prove the truth of the matter *901 asserted is not hearsay. La. C.E. art. 801(C); State v. Tate, supra; State v. Hicks, 607 So.2d 937 (La.App. 2nd Cir. 1992).
Pitman's testimony regarding the contents of Cooks' letters was not intended to prove the truth of Norris' presence at the crime scene. Rather, Pitman's reference to out-of-court statements made by Cooks in his letters was obviously intended to corroborate his testimony regarding what the defendant knew about the crime when he gave his statement. During its case in chief, the state did not call Pitman as a witness, did not introduce the defendant's statement into evidence, and did not introduce Cooks' letters into evidence. It was the defendant who raised his own prior statement as an issue and who called Pitman as a witness. It was Pitman who referred to Cooks' letters to corroborate his own testimony as to the truthfulness of the defendant's statement.
By corroborating the defendant's statement, Pitman's testimony regarding the contents of Cooks' letters served to place the defendant at the crime scene with Cooks, a man who had already been convicted of first degree murder for this crime. While the result of Pitman's reference to an out-of-court statement made by another is arguably prejudicial, no such prejudice resulted in this instance. A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused. La.C.Cr.P. art. 921. Error by the trial court is not fatal unless the defendant demonstrates prejudice. State v. Gantt, 616 So.2d 1300 (La.App. 2nd Cir.1993), writ denied, 623 So.2d 1302 (La.1993). As stated previously, four witnesses placed the defendant at the crime scene. The jury also had the benefit of hearing the defendant's statement in which he admitted his involvement in the crime. Considering the substantial evidence of the defendant's guilt, we find that any error in the admission of Pitman's testimony regarding Cooks' letters to be harmless error.
This assignment of error is without merit.

THIRD ASSIGNMENT OF ERROR
In his third assignment of error, the defendant asserts that the trial court erred in allowing Mike Pitman, a defense witness, to remain in court during the testimony of other defense witnesses. The defendant argues that Pitman's violation of the rule of sequestration "severely weakened" the defense's ability to develop facts while questioning Pitman.
La. C.E. art. 615(A) provides in relevant part:
On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case.
Our review of the record reveals that neither party requested sequestration and that the court did not on its own motion order sequestration of the witnesses. The record further reveals that there was no objection as to a violation of sequestration at the time of Pitman's testimony. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La.C.Cr.P. art. 841. We find no merit in this assignment of error.
In addition to addressing the above assignments of error, we have reviewed the record for error patent and found none.

CONCLUSION
For the reasons discussed, the defendant's conviction and sentence are affirmed.
AFFIRMED.