895 So.2d 780 (2005)
STATE of Louisiana, Appellee,
v.
Jimmy Lynn McGEE, Appellant.
No. 39,336-KA.
Court of Appeal of Louisiana, Second Circuit.
March 4, 2005.
*782 Sherry Watters, Louisiana Appellate Project, for Appellant.
Paul J. Carmouche, District Attorney, Tommy Johnson, Carlos Prudhomme, Assistant District Attorneys, for Appellee.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
GASKINS, J.
The defendant, Jimmy Lynn McGee, was convicted of purse snatching and sentenced to three and one-half years at hard labor. The defendant appeals. We affirm.

FACTS
On the evening of March 12, 2002, the victim, Kari Walker, and her mother, Marianne Marsh, were shopping at Brookshire's on Mansfield Road in Shreveport. They went to their vehicles which were parked side by side in the parking lot. When the victim was placing her groceries in her truck, a ball belonging to her son fell out of the vehicle and rolled under her mother's car. She bent to retrieve it.
At this time, an older model two-door white car pulled up. A white male exited from the driver's side; he was described as being "skinny," about 5'9," with shoulder length dark blond or brown hair with a "scruffy" beard. A white female with long dark hair slid into the driver's seat. The man walked toward the victim, asking if something was wrong. The man then grabbed the victim's arm upon which she had her purse and began to pull. The victim held onto her purse. Believing that the man was trying to force her daughter into his car, Ms. Marsh grabbed the victim's other arm and held on to her.
The man yelled to the female in the car, "Go, go!" The man continued dragging the victim and her purse along with him as he got into the car which was beginning to move. The victim and her mother were both hollering. Finally the strap of the victim's purse broke, and the purse snatcher and his accomplice fled in the white car. According to the victim, the contents of her purse included $400 cash, a checkbook, several credit cards, a few gift cards from Christmas, keys, and a cell phone.
Shortly thereafter, the police located the defendant in the parking lot of a Johnny's Pizza at Mansfield and Colquitt with a white car. Because he lacked identification, the officer conducted a field interview *783 during which the defendant voluntarily answered questions and placed his thumb print on the back of the field interview card. The defendant gave his name as Wayne McGee. He was released by the police.[1]
The next day, the victim was contacted by an employee of the Stage store at Eastgate Shopping Center. A man and a woman tried to use her Stage credit card. When the card was found to be stolen, the couple left the store, leaving behind the card and the victim's driver's license. These were the only items from the victim's purse that were recovered.
The detective assigned the case, J.P. Brown, researched the name given by the defendant and learned that it was an alias for the defendant. Detective Brown interviewed the victim and her mother separately. Each woman testified that she picked the defendant out of a photo lineup. The detective also spoke separately to the two Stage employees who saw the man and the woman attempting to use the victim's stolen credit card. Both employees picked the defendant out of a photo lineup.
Thereafter, Detective Brown placed the defendant under arrest for purse snatching. The defendant denied committing the offense and suggested that the actual perpetrator was a Keithville man who resembled him.
Trial was held on May 20 and 21, 2003. In addition to Detective Brown, the state presented the testimony of the victim and her mother, who identified the defendant in court as the man they encountered in the grocery store's parking lot. The defendant testified, denying that he was the one who stole the victim's purse. He stated that he was with a friend, Angela Sepulvado, and her teenage son, Rod Wesley Mahon. After the boy got home from school, they went first to the home of the defendant's mother and then to Johnny's Pizza. While they were waiting for their pizza, the police arrived and handcuffed the defendant to question him. However, he was released and allowed to leave. Ms. Sepulvado and her son also testified about the incident.
The defense further presented the testimony of Billy Jo Meshell and Michael Canizaro. Meshell testified that she was a friend of a man named Carey McGrew and that he had given her the victim's Stage credit card. According to her, she and McGrew went to the Stage store and tried unsuccessfully to use the card. Meshell testified that after this incident she was sentenced to Caddo Correctional Center (CCC) on an unrelated matter. McGrew failed to pick her up when she was released in June or July 2002 because he had supposedly been arrested for stealing a wallet or purse. She also stated that McGrew had a small white car. Although she stated that McGrew wore a beard and mustache, she said she had only known him to have short hair. Canizaro, also a CCC inmate, testified that he knew McGrew as a fellow inmate and that he had bragged about the Stage incident with Meshell to him. He described McGrew as 5'10", with a "rough" mustache and thinning brown hair with a reddish tint.
The jury unanimously convicted the defendant as charged of purse snatching. He was sentenced to three and one-half years at hard labor, to run concurrently with any other sentence.
The defendant's motions for new trial and for postverdict judgment of acquittal *784 were denied, as was his motion to reconsider sentence.
The defendant appealed.

SUFFICIENCY OF EVIDENCE
The defendant contends that the evidence was insufficient to convict him of purse snatching because the photo lineup was suggestive, the in-court identification was tainted by the photo lineup, no forensic evidence corroborated the identification of the defendant as the perpetrator, no investigation of other suspects was conducted, and there was "credible" alibi evidence.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, XXXX-XXXX (La.11/14/03), 858 So.2d 422. The jury in this case apparently did not believe the defendant's alibi witnesses.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson standard also applies to identification. See State v. Hamilton, 594 So.2d 1376 (La.App. 2d Cir.1992); State v. Turner, 37,162 (La.App.2d Cir.10/29/03), 859 So.2d 911, writ denied, XXXX-XXXX (La.3/26/04), 871 So.2d 347. A positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12; State v. Turner, supra.
Factors for evaluating the reliability of an identification are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the victim's prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. State v. Davis, supra.
The defendant attacks the photo lineup identifications of the defendant by the victim and her mother as suggestive. However, we note that the defense never filed a motion to suppress these identifications. A defendant who fails to file a motion to suppress an identification, and who fails to object at trial to the admission of the identification testimony waives the right to assert the error on appeal. State v. Walker, 94-0587 (La.App. 1st Cir.4/7/95), 654 So.2d 451, writs denied, 95-1124 & 95-1125 (La.9/22/95), 660 So.2d *785 470. The photo lineup itself was not introduced at trial.
As to the defendant's witnesses, we note that a close review of the testimony of the three alibi witnesses shows a number of discrepancies. The defendant, his female friend and her young son were unable to agree on several key points, including the time they were in the parking lot of the pizza restaurant and where they went after their confrontation with the police. The other two witnesses to testify on the defendant's behalf were or had been CCC inmates. In particular, we note Meshell's testimony that she had never known McGrew, her friend who supposedly committed the offense instead of the defendant, to have long hair. Her testimony indicates that she met him a few months before the offense and that she saw him the day after the offense; the man who stole the victim's purse was consistently described as having shoulder length hair. Also, the defendant never produced McGrew (who was incarcerated, according to a defense witness) or even his photo to show that he bore any resemblance to the defendant.
Both the victim and her mother were in close proximity to the purse snatcher during the crime. They had not only the opportunity to see the perpetrator but also good cause to have their attention focused upon him. Both women identified the defendant as the man who stole the victim's purse. The jury, which had the advantage of viewing their demeanor, chose to believe them and not the defendant's witnesses. We are in no position to upset this credibility determination by the trier of fact.
Viewed in the light most favorable to the prosecution, the evidence presented at trial was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant committed the offense of purse snatching. This assignment of error lacks merit.

HEARSAY EVIDENCE
In this assignment of error, the defendant contends that his conviction substantially rests upon hearsay evidence which was improperly allowed during Detective Brown's testimony. He complains that other witnesses should have testified, such as the shoppers at the crime scene, the responding officers at the crime scene and the pizza restaurant parking lot, and the Stage employees.
The contemporaneous objection rule is that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841; State v. Brown, 552 So.2d 612 (La.App. 2d Cir.1989), writ denied, 558 So.2d 581 (La.1990).
Where the state's case rests entirely on hearsay evidence, counsel's failure to object does not necessarily foreclose inquiry into the reliability of the result. State v. Allien, 366 So.2d 1308 (La.1978); State v. Lubrano, 563 So.2d 847 (La.1990); State v. Johnson, XXXX-XXXX (La.App. 4th Cir.1/27/99), 726 So.2d 1126, writ denied, XXXX-XXXX (La.8/25/99), 747 So.2d 56.
The defendant failed to object to any hearsay evidence. However, the state's entire case did not rely upon hearsay. To the contrary, it rested upon the identification of the defendant as the purse snatcher by both the victim and her mother. As previously noted, this alone is sufficient to sustain the defendant's conviction.
Since the matters complained of were not objected to at trial, and were not the "substantial part" of the state's evidence, this assignment has no merit.

*786 OTHER CRIMES EVIDENCE
The defendant also contends that the trial court erred in allowing Detective Brown to interject impermissible "other crimes" or other bad acts evidence. Specifically, he stated that the defendant gave a false name to the police in the pizza restaurant parking lot; that the defendant was listed in a police computer for a 1983 arrest; that he interviewed the defendant at his office because he had been arrested on other charges; and that the defendant possessed stolen property and tried to commit a theft at the Stage store.
The first two instances occurred when Detective Brown was explaining his investigation of the crime  that he reviewed the field interview card from the defendant's stop in the pizza restaurant parking lot and did research on the city computer. At this point, the trial court called both counsel to the bench for a conference. When the officer resumed his testimony, he stated that he researched the name given by the defendant to the officers, "Wayne McGee," and discovered that it was an alias for a "Jimmy McGee" who was arrested in 1983. The trial court again called counsel to the bench. Like the prior sidebar, this conference was not transcribed.
Later in Detective Brown's testimony, the prosecutor asked about his interview of the defendant at his office at the Shreveport Police Department, inquiring how the defendant arrived there. The officer responded that the defendant was already under arrest and in custody at Caddo Correctional Center.[2] Defense counsel requested to approach the bench and the jury was removed from the courtroom. Counsel for the defendant objected to any other crimes testimony, and the trial court admonished the state to not allow his witnesses to refer to other crimes evidence. Defense counsel stated that her objection would be continuous and, if such comments continued, she would move for a mistrial. The trial court noted for the record that it had admonished the prosecutor at the prior sidebars and stated that "this is the last time the Court will admonish."
As to Detective Brown's testimony that a man and a woman went to the Stage store with two items stolen from the victim and that the defendant was identified as that man, the defense made no objection and did not move for a mistrial.
La. C.E. art. 404 provides that evidence of other crimes, acts or wrongs is generally not admissible. When a witness refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible, upon request of the defendant, the defendant's remedy is a request for an admonition or a mistrial pursuant to La. C. Cr. P. art. 771. State v. Holmes, 2002-2263 (La.App. 4th Cir.2/26/03), 841 So.2d 80.
La. C. Cr. P. art. 771 provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or

*787 (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770. In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
La. C. Cr. P. art. 775 provides that a mistrial shall be ordered when prejudicial conduct in the courtroom makes it impossible for the defendant to obtain a fair trial. Because a mistrial is a drastic remedy, it should be granted only when the error resulted in substantial prejudice sufficient to deprive the defendant of any reasonable expectation of a fair trial. State v. Turner, supra. The decision to grant or deny a mistrial for prejudicial conduct rests within the trial court's discretion and will not be disturbed absent an abuse of discretion. State v. Turner, supra.
At no point did the defendant actually request a mistrial. Nor did he request an admonition to the jury to disregard the statements in question. There was no contemporaneous objection to the final matter of which appellate defense counsel complains. The rulings made by the trial court on these matters were within its discretion and there is no showing of an abuse of that discretion.
Even when other crimes evidence is improperly admitted at trial, the erroneous admission is a trial error and is subject to the harmless error analysis on appeal. State v. Bratton, 32,090 (La.App.2d Cir.6/16/99), 742 So.2d 896; State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, reconsideration denied, 94-1379 (La.4/8/96), 671 So.2d 332. Trial error is harmless where the verdict rendered is "surely unattributable to the error." State v. Bratton, supra. In view of the unequivocal identification of the defendant as the purse snatcher by the victim and her mother, we find that any improper reference to other crimes during Detective Brown's testimony was surely harmless error.
This assignment of error lacks merit.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] In the meantime, the victim and her mother were called and asked to come view a suspect. However, they were then told that the police were unable to hold the suspect long enough for them to arrive.
[2] We note that, for all the jury knew, the defendant could have been in custody for the present offense, not another crime, when the detective spoke to him.