920 So.2d 949 (2006)
STATE of Louisiana, Appellee/Appellant
v.
Garry ZEIGLER, Sr., Appellant/Appellee.
No. 40,673-KA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 2006.
Rehearing Denied March 2, 2006.
*951 Louisiana Appellant Project, by James E. Beal, Jonesboro, for Appellant/Appellee.
Jerry Jones, District Attorney, R. Nicholas Anderson, Assistant District Attorney, Appellee/Appellant.
Before BROWN, PEATROSS and LOLLEY, JJ.
LOLLEY, J.
The Fourth Judicial District Court, Parish of Ouachita, State of Louisiana convicted Garry Zeigler Sr. for the distribution of cocaine, adjudicated him a third felony habitual offender, and sentenced him to serve a term of 25 years imprisonment without benefit of probation or suspension of sentence. Zeigler and the state both appeal. For the following reasons, we affirm the conviction and habitual offender adjudication, but vacate the sentence and remand, with instructions, for re-sentencing.

FACTS
In September 2003 the Metro Narcotics FBI Drug Task Force (hereinafter referred to as "Metro") conducted a "buy bust" on Craig Morgan.[1] Information obtained from Morgan led to a Metro investigation of the defendant, Garry Zeigler, Sr. Specifically, Morgan identified Zeigler as his cocaine supplier to Lieutenant Mike Rowland, a narcotics agent with the Ouachita Parish Sheriff's Office assigned to Metro.[2] Ultimately, Zeigler was charged by bill of information with distribution of cocaine. His initial trial commenced on May 4, 2004, but ended in a mistrial. Zeigler was re-tried on June 28, 2004. Metro officers Lt. Rowland, Corporal Mark Johnson and Deputy Sheriff Jack Kottenbrook, plus reliable confidential informant Thomas Brown all testified at Zeigler's trial.[3]
At Zeigler's second trial, Lt. Rowland related that on September 5, 2003, in the presence of Metro agents at their offices, Morgan made a recorded phone call to *952 Zeigler and requested cocaine. Zeigler told Morgan that he was out of cocaine but would get more later that day. The jury listened to the tape recording of that conversation.
On September 9th Zeigler called Morgan at Morgan's residence, and a cocaine deal was set up. Morgan was to meet Zeigler "in a few minutes" at a gas station in West Monroe, Louisiana. Morgan contacted Lt. Rowland and advised him of the arrangements.
As further explained at trial by Lt. Rowland, he set up a buy bust of Zeigler. He arranged for the reliable confidential informant, Brown who was known as "Wrangler," to drive Morgan to the meeting with Zeigler. Metro officers searched Brown's vehicle and then equipped it with audio and video recording/surveillance equipment. Brown was briefed on the drug deal and shown a photograph of Zeigler. Metro officers searched Brown and then gave him $100.00 of pre-recorded "buy money." Metro surveillance units followed Brown as he drove to pick up Morgan and brought him to the designated gas station. Wrangler waited for the defendant while he met with Zeigler.
Brown testified that Zeigler arrived at the gas station, and Morgan yelled to him to get his attention. Zeigler stopped at the end of the parking lot, and Morgan walked over to Zeigler's vehicle. At that time, Zeigler handed Morgan a blue, clear plastic ball containing cocaine. Morgan returned to Brown's vehicle with the cocaine, and Brown handed Morgan the buy money. Morgan then went over to Zeigler's vehicle and handed him the buy money, completing the transaction.
Brown had given a description of Zeigler's vehicle to the surveillance unit and had observed the hand-to-hand transfer of cocaine and money between Morgan and Zeigler from his vehicle. Lieutenant Rowland testified that he listened to the transaction as it took place via Brown's surveillance equipment.
Immediately after the transaction, Lt. Rowland arrived on the scene and took possession of the plastic ball containing six pieces of what was later determined to be crack cocaine. Lieutenant Rowland testified that the crime lab report stated that the analysis showed the seized items to be cocaine. The state's motion to introduce the crime lab report into evidence was granted without objection by the defense.
As Zeigler drove away, he was immediately followed by Metro surveillance and warrant units, which included Corp. Johnson and Dep. Kottenbrook. According to Corp. Johnson, Metro units attempted to block in Zeigler at an intersection to make the arrest; however, he drove through the red light and collided with Dep. Kottenbrook's vehicle. Corporal Johnson testified that Zeigler was subsequently removed from his vehicle (he was unharmed), handcuffed, arrested and advised of his Miranda rights. Corporal Johnson recovered the $100.00 buy money from between the driver's seat and the console of Zeigler's vehicle and turned it over to Lt. Rowland.
Following this trial, Zeigler was found guilty as charged by a jury vote of ten to two. He filed several post-trial motions, including motions to quash, for discovery and for a new trial. The motion for new trial was heard and denied by the trial court. The state filed an amended bill of information charging Zeigler as a habitual felony offender  fourth offense. Following the habitual offender hearing, Zeigler was adjudicated a third felony habitual offender and sentenced to serve 25 years imprisonment at hard labor without benefit of probation or suspension of sentence. Zeigler's timely filed motion to reconsider *953 sentence was denied, and this appeal followed. The state has also appealed on the issue of Zeigler's habitual offender adjudication.

DISCUSSION

Sufficiency of the Evidence
On appeal, Zeigler raises several assignments of error. The first issue we will address is whether the evidence was sufficient to support Zeigler's conviction.[4]
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.09/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.02/05/99), 737 So.2d 747.
A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App. 2d Cir.08/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2d Cir.05/08/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, XXXX-XXXX (La.06/26/98), 719 So.2d 1048. Furthermore, positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App. 2d Cir.04/08/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12.
*954 A defendant is guilty of distribution of cocaine when he transfers possession or control of the cocaine to his intended recipients. State v. Bradford, 32,747 (La.App. 2d Cir.10/27/99), 745 So.2d 800.
In this case, a review of the record supports the conclusion that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to reasonably conclude that all of the elements of distribution of cocaine were proved beyond a reasonable doubt. See State v. Hearold, supra; State v. Bosley, supra. At trial, the jury was presented with the testimony of the investigating officers and the reliable confidential informant who witnessed the transfer of the cocaine between Zeigler and Morgan. Along with the physical evidence it was proved, beyond a reasonable doubt, that Zeigler was guilty of distribution of cocaine, because he transferred possession or control of the cocaine to Morgan, his intended recipient. See State v. Bradford, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of the witnesses at trial, obviously believed by the trier of fact, was sufficient support for a requisite factual conclusion. See State v. White, supra. We will not assess the credibility of witnesses or reweigh evidence that has been reasonably considered by the fact-finder at the trial. State v. Smith, supra. This assignment of error has no merit.

Hearsay
Zeigler also argues that the trial court erred when it allowed hearsay testimony which contained evidence of other crimes not admissible at the trial of the instant matter. Specifically, Zeigler refers to a statement during the trial testimony of Lt. Rowland as follows:
Q: In September of 2003, did you conduct an investigation concerning the defendant Garry Zeigler?
A: Yes. I did.
* * *
Q: How did that investigation originate?
A: That investigation originated with another buy/bust I described earlier with a subject known as Craig Morgan. He sold cocaine to an undercover police officer. We brought him back to Metro Narcotics and he divulged his supplier which was Garry Zeigler.
At the trial, Zeigler objected to the admission of this hearsay testimony as inadmissible. The state explained that the purpose for eliciting the information was that it showed why the investigation originated and that the investigation of Zeigler was not random. The trial court overruled the objection and allowed the testimony, instructing the jury that it was not to be accepted as to the truth of the declaration. Zeigler again objected to Lt. Rowland's hearsay testimony regarding Morgan's account of how Zeigler contacted him and that the cocaine deal had been set up. The trial court again overruled the objection without any further cautionary instructions to the jury. As previously stated, Morgan was called by the state as a witness, but refused to testify.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(A)(1) and (C). Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802; State v. Wade, 39,797 (La.App. 2d Cir.08/09/05), 908 So.2d 1220. Hearsay is excluded because the value of the statement rests on *955 the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. Id., citing, State v. Martin, 458 So.2d 454 (La. 1984).
Where an investigating officer testifies concerning events leading to the arrest of a defendant, statements made to him by others during the course of the investigation are not hearsay, if they are not offered for the truth of the matter asserted, but merely to explain the officer's actions. State v. Wade, supra. In other words, where the officer does not testify with regard to the substance of what another person told him, but with regard to what he did in response to that information, the testimony is not considered hearsay. Id.
Nevertheless, the erroneous admission of hearsay evidence does not require a reversal of the defendant's conviction if the error is harmless beyond a reasonable doubt. Reversal is mandated only when there is a reasonable possibility that the hearsay evidence might have contributed to the verdict. Id., citing State v. Wille, 559 So.2d 1321 (La.1990).
In the instant case, a review of the record clearly shows that the evidence was sufficient to support Zeigler's conviction, even without consideration of the questioned testimony. Upon reading the testimony at trial, it is evident that Zeigler's conviction did not hinge on Lt. Rowland's hearsay statement that Morgan identified Zeigler as his "supplier." In fact, omission of that statement would have still resulted in sufficient evidence to convict. Thus, any erroneous admission of hearsay evidence does not require a reversal of Zeigler's conviction, because the error can be considered as harmless beyond a reasonable doubt. Reversal is mandated only when there is a reasonable possibility that the hearsay evidence might have contributed to the verdict. State v. Wade, supra. This assignment is therefore without merit.

Evidence Considered by the Jury During Deliberations
In another assignment of error, Zeigler argues that the trial court erred when it allowed the jury to examine the crime lab report during deliberations. Specifically, during jury deliberations, the jury requested that the crime lab report from the Northeast Louisiana Crime Lab be provided to them. The trial court allowed the crime lab report to be provided over Zeigler's objection that it was written evidence. Notably, the crime lab report was introduced into evidence at trial without objection. During the trial, Lt. Rowland identified the report and stated that the report reflected that the substance Zeigler sold to Morgan had been analyzed and was determined to be cocaine. The testimony was uncontradicted and there was never any issue raised that the substance Zeigler transferred to Morgan was anything other than cocaine.
Louisiana C. Cr. P. art. 793 provides in pertinent part;
A. Except as provided in Paragraph B of this Article, a juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
Generally, a jury is not to inspect written evidence except for the sole purpose of a physical examination of the document itself to determine an issue *956 which does not require the examination of the verbal contents of the document. State v. Perkins, 423 So.2d 1103 (La.1982). A jury can examine a written statement to ascertain or compare a signature or to see or feel it with regard to its actual existence, but not to examine its verbal contents. Id. Louisiana courts have reversed convictions where the jury viewed a defendant's confession or written statement or re-examined verbal testimony during deliberations.[5]
The disputed evidence in this case, although a writing, is not in that realm of being a written confession/statement or transcribed testimony. However, for the sake of argument, even if we determined that the trial court erred in allowing the jury to review the crime lab report, i.e., the trial court violated La. C. Cr. P. art. 793, that violation does not necessarily warrant reversal. Although the erroneous presentation of written, documentary evidence to the jury during deliberations is considered to be trial error, such trial error can be quantitatively assessed in the context of other evidence, and therefore is subject to harmless error analysis. State v. Johnson, XXXX-XXXX (La.App. 4th Cir.01/27/99), 726 So.2d 1126, writ denied, XXXX-XXXX (La.08/25/99), 747 So.2d 56.
In State v. Johnson, supra, the trial court allowed the jury to examine during deliberations certain medical reports in the defendant's trial for aggravated rape of minors and aggravated crime against nature.[6] Ultimately, the appeal court determined that allowing the jury to examine the medical reports was a violation of art. 793, but that the conviction was not attributable to the examination of the records. Id. at 1135.
As in State v. Johnson, supra, the document in question was not a transcription of verbal testimony or a statement by the defendant. In Johnson, the court considered that the jury had not seen the medical reports previous to their deliberations; however, in Zeigler's case, the record is not conclusive as to whether or not the jury actually saw the crime lab report during the trial. Nonetheless, in this case, considering the tape recording of Zeigler telling Morgan he was out of cocaine, but he would have more later on that day, that statement alone conclusively identifies the substance (at least in Zeigler's mind) as cocaine. Moreover, there was no evidence to suggest that the substance was not cocaine. The crime lab report merely provided scientific proof of what the parties already believed to be true. So considering, and in light of the totality of the evidence at trial, it is apparent that Zeigler's conviction was not attributable to the trial error, and the trial court's violation of La. C. Cr. P. art. 793 was harmless.

Habitual Offender Adjudication
As to this issue, the state appeals the trial court's adjudication of Zeigler as a third felony offender, instead of a fourth felony offender as charged in the amended bill of information. Zeigler maintains that the trial court was within its discretion in so ruling. However, we consider the *957 state's assignment of error moot for the following reasons.
After Zeigler's conviction, the state filed a bill of information charging him as a third felony habitual offender, but subsequently amended the bill of information charging the defendant as a fourth felony habitual offender. Zeigler answered the habitual offender bill and alleged that irregularities existed with two of the predicate offenses listed in the amended bill.
At Zeigler's habitual offender hearing, the state presented evidence regarding the predicate offenses (along with evidence of the instant offence), which included: (1) a 1977 conviction for simple burglary, a violation of La. R.S. 14:62; (2) a 1991 conviction for distribution of cocaine, a violation of La. R.S. 40:967; and (3) a 1998 conviction for possession of cocaine with intent to distribute, a violation of La. R.S. 40:967.
Zeigler stipulated to the authenticity of all of the documents presented by the state to support the predicate offenses, except for a document by the Louisiana Department Of Public Safety and Corrections and the identification of the fingerprints on the underlying documentation as belonging to Zeigler. At the hearing, the state's evidence also included testimony of Deputy Renee Shaw of the Ouachita Parish Sheriff's Office, who was qualified as an expert in fingerprint analysis comparison of ink prints to ink prints. She compared Zeigler's 2003 booking fingerprints for the instant offense to fingerprints on the bills of information for the two predicate drug offenses and to booking fingerprints in 1977 for the simple burglary offense. Shaw determined that all of the fingerprints were made by the same person. Corey Bennett, a state probation officer, testified that he supervised the defendant for over nine years and made an in-court identification of him as the same person he supervised while on parole for Zeigler's 1998 conviction.
After considering the matter, the trial court found Zeigler to be a third felony habitual offender, and, applying La. R.S. 15:529.1 A(1)(b)(i), sentenced him to serve 25 years imprisonment at hard labor without benefit of probation or suspension of sentence. In adjudicating Zeigler a third felony habitual offender, the trial court rejected the 1977 simple burglary conviction for the habitual offender adjudication because of the absence of any colloquy to show actual Boykin compliance, which the state now submits was in error. However, this assignment of error by the state is moot.
Our error patent review shows that the trial court, in sentencing Zeigler as a habitual offender, failed to apply or even consider La. R.S. 15:529.1(A)(1)(b)(ii), which provides:

If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(13), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence. (Emphasis added).
Zeigler's instant offense (distribution of cocaine committed on September 9, 2003) and two predicate offenses (distribution of cocaine in 1991 committed on June 24, 1991, and possession of cocaine with intent to distribute committed on October 15, 1998) are violations of the Uniform Controlled *958 Dangerous Substances Law punishable by ten years imprisonment or more. La. R.S. 40:967(B)(4)(b). Therefore, under the habitual offender statute as it existed at the time of the commission of this offense (September 9, 2003), Zeigler was subject to an enhanced mandatory minimum sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 15:529.1 A(1)(b)(ii). Hence, his enhanced sentence is illegally lenient.
Notably, neither the state nor Zeigler raised that issue below or on appeal. Nor did the state cite this subsection of the statute in either multiple offender bill or enter an objection at sentencing. Nonetheless, pursuant to State v. Williams, XXXX-XXXX (La.11/28/01), 800 So.2d 790, and La. C. Cr. P. art. 882, appellate courts have authority to correct an illegally lenient sentence despite the fact that neither party raised the issue in the district court nor on appeal. See State v. Clemons, 01-1032 (La.App. 5th Cir.02/26/02), 811 So.2d 1047, 1049, writ denied, XXXX-XXXX (La.11/22/02), 834 So.2d 972, cert. denied, 538 U.S. 1063, 123 S.Ct. 2228, 155 L.Ed.2d 1117 (2003). So considering, this matter is remanded to the trial court for re-sentencing pursuant to the provisions of La. R.S. 15:529.1 A(1)(b)(ii).

CONCLUSION
For the foregoing reasons, Garry Zeigler Sr.'s conviction and habitual offender adjudication is affirmed. His sentence is vacated, and the matter is remanded for re-sentencing in accordance with this opinion, specifically, La. R.S. 15:529.1 A(1)(b)(ii).
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RE-SENTENCING IN ACCORDANCE WITH THIS OPINION.

APPLICATION FOR REHEARING
Before BROWN, CARAWAY, PEATROSS, DREW and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] A "buy bust" is a police operation in which drugs are purchased and the dealer is arrested at the same time.
[2] Lt. Rowland's name also appears in the record as "Rowlan."
[3] Morgan was called by the state as a witness, but refused to testify.
[4] Although the record does not reflect that Zeigler filed a motion for post-verdict judgment of acquittal pursuant to La. C. Cr. P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Henson, 38,820 (La.App. 2d Cir.09/22/04), 882 So.2d 670.
[5] See State v. Adams, 550 So.2d 595 (La.1989) (jury reviewed defendant's confession to police); State v. Perkins, supra (conviction for first degree murder reversed based on a Brady violation and because during deliberations the jury examined the defendant's written statement); State v. Buras, 459 So.2d 756 (La.App. 4th Cir.1984) (aggravated kidnapping reversed because during deliberations the jury was given a transcript of recorded telephone calls between the kidnappers and the victim's family); State v. Gracia, 527 So.2d 488 (La.App. 5th Cir.1988) (jury reviewed the defendant's written statements).
[6] Notably, the medical reports in Johnson, supra, a sex offense case, are analogous to the crime lab report in this drug offense case.