STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-829


STATE OF LOUISIANA

VERSUS

R.W.W.


********** 

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 05-141
HONORABLE PEYTON CUNNINGHAM, JR., PRO TEMPORE JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Paula C. Marx
Louisiana Appellate Project
Post Office Box 80006
Lafayette, LA   70598-0006
(337) 991-9757
COUNSEL FOR DEFENDANT/APPELLANT:
        R.W.W.

Renee W. Dugas
Assistant District Attorney
Post Office Box 309
Colfax, LA   71417
(318) 627-2971
COUNSEL FOR APPELLEE:
        State of Louisiana

AMY, Judge.

A defendant was charged with aggravated rape and two counts of sexual battery. A jury found him guilty as charged. The defendant appealed. Among his assignments of error, the defendant alleged that the trial court erred by allowing the jurors to view documentary evidence during deliberations. This court conditionally affirmed his convictions and sentences and remanded for a determination of whether La.Code Crim.P. art. 793 was violated. After a contradictory hearing, the trial court found that the error was an insufficient violation and did not constitute reversible error. The defendant appeals. For the reasons that follow, we affirm.

**Factual and Procedural Background**

In a jury trial, the defendant, R.W.W.[1], was convicted of aggravated rape, in violation of La.R.S. 14:42(A)(4), and two counts of sexual battery, in violation of La.R.S. 14:43.1. Receiving credit for time served, he was sentenced to life imprisonment at hard labor for the aggravated rape conviction, and he was sentenced to serve ten years at hard labor for each sexual battery conviction. The sentences were imposed without benefit of parole, probation, or suspension of sentence. The trial court denied the defendant's motion for post-verdict judgment of acquittal or, alternatively, for a new trial.

The defendant appealed, arguing that the evidence was insufficient to sustain the conviction, that the court violated La.Code Crim.P. art 793 by allowing the jury to view transcripts of the victims' statements after it had retired to deliberate, and that the judge erred in denying his motion for a new trial without a contradictory hearing. This court found sufficient evidence to affirm the convictions, but remanded the case to the trial court for "an evidentiary hearing to determine whether the jury reviewed

---

[1] Pursuant to La.R.S. 46:1844(W)(1), the defendant's initials are used to protect the identity of the victim.

the transcripts of the victims' interviews during deliberations and whether the defendant timely objected to any alleged error." *State v. R.W.W.*, 06-1253, pp. 12-13 (La.App. 3 Cir. 3/7/07), 953 So.2d 131, 138.

As ordered, the trial court conducted the evidentiary hearing. After listening to the testimony of the jurors, court personnel, and observers, the trial court, providing reasons for ruling, found no reversible error. Accordingly, it denied the defendant's motion for new trial. The defendant appeals. For the following reasons, we affirm.

## Discussion

In his sole assignment of error, the defendant contends that "[t]he trial court erred in finding no violation of Louisiana Code of Criminal Procedure Article 793 and further erred in denying RWW a new trial." In making its determination, the trial court addressed the testimony of each witness:

> This court held an evidentiary hearing on October 12, 2007, with testimony from jurors and witnesses of the trial to clarify the record as to whether the jurors received transcripts during deliberations, how long they may have had the transcripts, and whether they left the courtroom with transcripts. The evidentiary hearing also addressed whether the defendant objected to this course of events in a timely manner.

### Witness Testimony at Evidentiary Hearing

### I. Jurors

> Each of the six original jurors, out of the twelve who served at trial, that testified at the evidentiary hearing recalled (1) coming back into the courtroom during deliberations, (2) documents being passed out to some jurors in the courtroom, and (3) those documents were retrieved quickly before all had received a copy and before having an opportunity to review the documents. Each juror stated that there was not enough time to have read the documents before they were taken up by the bailiff. As to an objection by the defendant, only two jurors, Ernie Vallery and Jodiah Johnson, recall the defendant's attorney saying something such as stating an objection to the court, but the other jurors could not recall.

2

**a.** Ernie Vallery

Mr. Vallery served as the jury foreman. Mr. Vallery testified that there were no documents in the jury room. He remembers coming back into the courtroom during deliberations to ask about jury instructions. While in the courtroom, he recalls that transcripts "started to be passed around but very briefly" before Mr. Wampler came in. He does not remember reviewing the transcripts, and none of those documents were taken from the courtroom.

**b.** Van Sibley

Mr. Sibley remembers coming back into the courtroom during deliberations, but the jurors did not have any papers in hand when they came from the jury room to the courtroom. When asked if any documents were handed to the jurors, he answered, "it might have been some handed out but I think they was picked up about as fast as they was handed out, if I remember correctly. I don't even think anybody had time to look at them."

**c.** William Hardy

Mr. Hardy remembers that upon coming back into the courtroom during deliberations he received a document to look at, but he only had a chance to read the front heading before closing it. When asked if he had sufficient time to have read all of it, he answered "No," because the time in which the documents were made available and then retrieved was "two minutes or less." He does not recall if Mr. Wampler objected.

**d.** Gerald Ray Johnson

Mr. Gerald Johnson testified that he remembers coming back into the courtroom during deliberations. He remembers the bailiff passing out some papers and that he received one, but he does not remember how many papers or what was on the paper. He testified that he did not have a chance to read what he had been given, and stated that the papers were in his possession for, "I'm guessing less than a minute," before he gave them up to the bailiff. He doesn't remember looking at any victims' transcripts, nor if Mr. Wampler was present or objected.

**e.** Jodiah Johnson

Mrs. Johnson remembers coming back into the courtroom during deliberations. When asked about the bailiff passing out papers, she answered, "I seem to recall that there were—might have been something passed out and taken up very quickly. I don't—I couldn't tell you, personally, what was on it. I don't even know if it reached me." Even if she had received something she doesn't remember what was on it. As

for the length of time they had papers, she said it was "not even a minute, maybe." She testified that Mr. Wampler came into the courtroom during this time with the papers, and she remembered that he said something but she did not remember, "if it had anything to do with the papers."

### f. Mary Murdock

Ms. Murdock testified that she had some difficulty remembering certain details because she stated, "I've slept since then." She remembers that the jury requested a transcript, but when asked where the jury was when it was given she answered, "Originally, I thought it was in that room but I think they passed it out when we were here [courtroom] and then immediately took it back." She says they did not have time to go through the transcript in its entirety, "Because it—by the time anybody got ready to actually open it up and look it was taken away. I might have seen the first page but I couldn't tell you what was on it." When asked how long it was between receiving the documents before they were given back, she estimated five minutes.

## II. Courtroom Witnesses

The following six witnesses were present in the courtroom during the trial and the deliberations. Two of these witnesses, [S.P.] and [L.P.], testified during the trial as defense witnesses. [S.C.] and [J.P.] were subpoenaed as defense witnesses, but they were not called to testify at trial. The testimony of all six witnesses is consistent among the group but conflicts with juror testimony. All witnesses were sequestered for this hearing. These witnesses all shared the same memory of (1) jurors coming into the courtroom from deliberations with papers in hand, (2) Mr. Wampler being out of the courtroom for at least 10 minutes while the jurors read the papers, and (3) Mr. Wampler coming in and objecting. None of these witnesses knew what these papers were, and their testimony did not concur on the number or thickness of the papers, but the implication is that the jurors received these documents and had them in the jury room.

### a. [S.P.]:

[S.P.] testified that she remembered the jury requested some documents, and when they came into the courtroom from the jury room they already had documents in their hands. Mr. Wampler was not in the courtroom when the jurors came into the courtroom, but his secretary was in the courtroom and she went out and got him. [S.P.] says Mr. Wampler was out for 15 minutes. She said that no documents were handed to them in the courtroom but taken from them. On cross-examination, she admitted to being convicted of perjury during the trial.

4

**b.** [S.C.]:

[S.C.] says the jury came into the courtroom and each juror had papers in hand. Mr. Wampler was not present in the courtroom when they came in, and he was out of the courtroom for 15-20 minutes. When he returned, he objected and the documents were taken from the jurors. On cross-exam and redirect, she said the time between the jurors coming in the courtroom and Wampler returning to the courtroom was only about 5 minutes.

**c.** [J.S.]:

[J.S.] testified that the jurors came into the courtroom with papers in hand that they were looking through and reading. Mr. Wampler was gone from the courtroom for three or four minutes when the jurors came in. He said Wampler objected and the papers were taken up, but that it was 15-20 minutes between the time the jurors walked in and the papers were taken back.

**d.** [J.P.]:

Mr. Wampler was out of the courtroom when the jurors came in and he was gone for 10-15 minutes. The jurors had papers in hand when they walked into the courtroom, and they were flipping through the papers. When Wampler returned to the courtroom, he objected, and the papers were taken back.

**e.** [D.C.]:

When asked if the jury came back from deliberations to ask the court a question, [D.C.] answered yes, and then before being asked about papers, he said that they were reading some papers that they had with them. Then when asked if Mr. Wampler was present when the jurors came back, he said, "He was not present, his secretary was. She had to go out and get him. He came back in and objected." ([D.C.] had not been asked specifically about papers or about Wampler's objection, before answering with those details.) On cross-examination, [D.C.] stated that he knew "for a fact" that the jurors had come in and out of the courtroom two times, but on direct examination he had not distinguished between two separate times. Despite his quick recall of the details from the second time the jury had come into the courtroom, [D.C.] could not recall any details of what occurred on the first time the jury had come back into the courtroom.

**f.** [L.P.]:

[L.P.] also testified that all jurors had a stack of papers in hand that they were reading when they came into the courtroom. She

5

estimated that the jurors were holding 30 pages of paper. Mr. Wampler was not present, and "about 8 minutes, 8 or 9 minutes" passed before he came in. On cross-examination, Assistant District Attorney Renee Dugas asked [L.P.] how the jurors got the papers, to which she responded, "Well, Mrs. Renee came in here and grabbed some papers off of a desk and took them back there in the room." [L.P.] was referring to Assistant District Attorney Renee Dugas. [L.P.] did not know what the papers were or where Mrs. Dugas went with them, but she claims that the papers were the same the jurors brought back into the courtroom. ([L.P.] is the only witness to testify to this peculiar sequence of events.) [L.P.] did not recall what happened to the papers that the jurors were reading in the courtroom.

### III.  Court Officers

**a.** Court Reporter, Tara Crooks Talley

Mrs. Talley testified that during deliberations she was in her office, and the bailiff told the judge that the jury had a question for him. At that time, the judge, jury, attorneys and court officers all went back into the courtroom. None of the jurors had anything—no papers—their hands when they came into the courtroom. The jurors asked to review transcripts that had been provided and retrieved during trial. The bailiff started handing out the transcripts, but not all of them received a document. She recalled that maybe only the first row had received copies, but that they wouldn't have had time to read the documents. Either the District Attorney or Mr. Wampler said the papers should not be handed out, and that is when the papers were retrieved. With respect to the amount of time the jurors had the papers, she stated, "Very little time, I mean, I wouldn't even say there was enough time to thumb through the whole document because we kind of like, hold up, hold up and everybody, you know, went—not more than a couple of minutes." When asked if the jurors took the transcripts back into the jury room, she answered, "Absolutely not," but they took a verdict form into the jury room.

**b.** Bailiff, George Bucko

Mr. Bucko testified that the jury was not provided with a copy of the transcripts while they were in the jury room. During deliberations, Mr. Bucko received a note from the jury, and he gave it to the judge, who advised him to escort the jury back into the courtroom. The jurors did not have any documents in their hands when they came from the jury room into the courtroom. While in the courtroom, the judge told him to hand some documents to the jurors. He started handing them out one at a time to the individual jurors but he only handed out copies to 3 or 4 jurors when the judge advised him to stop and pick them back up. He says those jurors would only have had possession of the documents for

30 seconds before the objection was made and they were taken back up.

**Findings and Conclusion**

Based on the testimony from the evidentiary hearing, this court finds that (1) copies of the victims' transcripts were passed out in the courtroom to fewer than all jurors, (2) the defendant objected as the transcripts were passed out, (3) the transcripts were retrieved immediately in response to the objection, and (4) the jurors did not examine the victims' transcripts in the jury room during deliberations.

The provisions of Louisiana Code of Criminal Procedure article 793 are meant to prevent jurors from giving undue weight to evidence that the jurors have time to review, examine, and take into consideration in reaching a verdict. According to the consistent testimony of six of the original twelve jurors, which is corroborated by the testimony of the court officers, no jurors [sic] had any opportunity to review or examine any evidence contained in those transcripts during deliberations. Subject to the harmless error analysis, this court finds that the trial error did not affect the outcome of the case nor prejudice the substantial rights of the defendant, and there was not a sufficient violation of Louisiana Code of Criminal Procedure article 793 to constitute reversible error.

In conclusion, this court finds no Louisiana Code of Criminal Procedure article 793 violation and denies the defendant a new trial.

(Citations omitted.)

Louisiana Code of Criminal Procedure Article 793 provides in pertinent part:

**Art. 793. Use of evidence in jury room;  reading of recorded testimony;  jurors' notes**

A. Except as provided in Paragraph B of this Article, a juror must rely upon his memory in reaching a verdict.  He shall not be permitted to refer to notes or to have access to any written evidence.  Testimony shall not be repeated to the jury.  Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.

In *State v. Freetime*, 303 So.2d 487, 488-89 (La.1974), the supreme court explained the policy behind La.Code Crim.P. art. 793:

The policy choice thus represented is to require jurors to rely on their own memories as to verbal testimony, without notes and without reference to written evidence, such as to depositions or transcribed

7

testimony. The general reason for the prohibition is a fear that the jurors might give undue weight to the limited portion of the verbal testimony thus brought into the room with them.

Considering La.Code Crim.P. art. 921[2] and jurisprudence, the fourth circuit stated:

> We conclude based on these cases that, although Art. 793's prohibition is explicit, violation of that article does not mandate reversal. Rather, the erroneous presentation of written, documentary evidence to the jury during deliberations is trial error that can be quantitatively assessed in the context of other evidence, and therefore is subject to harmless error analysis.

*State v. Johnson*, 97-1519, p. 17 (La.App. 4 Cir. 1/27/99), 726 So.2d 1126, 1134 *writ denied*, 99-0646 (La. 8/25/99), 747 So.2d 56.

In light of the foregoing authority, the issue is whether any error affected the outcome of the case or prejudiced the defendant's substantial rights. The defendant argues that the courtroom observers testified that the jurors had the transcripts in their possession for ten to twenty minutes, which is enough time to allow for "improper rereading of witness testimony." Also, he points out that only six jurors testified at the evidentiary hearing, leaving room for the possibility that the remaining jurors were "influenced unduly" and that the "error contributed to the verdict." Further, the defendant urges that the error was prejudicial because "the children had not testified as effectively in court as the statements reflected in the transcripts." Accordingly, the defendant asserts that the error should not be deemed harmless.

The State responds by pointing out that not all of the jurors had the transcript in their possession and those jurors who did receive a copy did not have time to read

---

[2] **Art. 921. Matters not grounds for reversal**

A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.

it. In support of this argument, the State relies on the consistency of the witnesses' testimony it contends were unbiased and calls into question the lack of personal knowledge of the other witnesses who may have been referring to the verdict forms, which the jurors were permitted to have in the jury room.

In *State v. Zeigler*, 40,673 (La.App. 2 Cir. 1/25/06), 920 So.2d 949, the defendant contended that the trial court erred by allowing the jury to review the crime lab report during deliberations. Over the defendant's objection, the trial court allowed the jury to view the written evidence that identified a substance as cocaine. The second circuit, noting that the report was entered into evidence at trial without objection and was shown to reflect that the substance sold by the defendant was cocaine, found that it was "apparent that [the defendant's] conviction was not attributable to the trial error, and the trial court's violation of La. C. Cr. P. art. 793 was harmless." *Id* at 956.

Similarly, in *State v. Hall*, 558 So.2d 1186 (La.App. 1 Cir.), *writ denied*, 564 So.2d 318 (La. 1990), a jury, during deliberations, was allowed to view an evidence envelope that was not admitted at trial. The defense attorney objected, and the trial court ordered that the evidence immediately be removed from the jurors' possession. The jury had access to the evidence for less than ten minutes. A voir dire examination was conducted, revealing that only one juror had actually looked at the contents of the evidence, specifically, a photograph of the victim. Due to the similarity between the photograph in the envelope and a nearly identical one properly viewed at trial, the first circuit found that any error that occurred was harmless.

After reviewing the record, we find support for the trial court's conclusion that the testimony of the six jurors and the court reporters all independently confirm that

9

the transcripts were not released long enough for a juror to have read it and/or given it undue weight when reaching the verdict. Accordingly, the distribution of the documents and any resulting error was harmless. Therefore, the defendant's assignment of error lacks merit.

## DECREE

For the foregoing reasons, the defendant's convictions are affirmed.

**AFFIRMED.**