22 So.3d 240 (2009)
STATE of Louisiana, Appellee
v.
Roderick CLARK, Appellant.
No. 44,612-KA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 2009.
*241 G. Paul Marx, Louisiana Appellate Project, Lafayette, for Appellant.
*242 Charles R. Scott, II, District Attorney, Suzanne Morelock Owen, Geya D. Williams Prudhomme, Natalie Howell, Assistant District Attorneys, for Appellee.
Before STEWART, CARAWAY and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. The defendant, Roderick Clark, was convicted by a jury of aggravated battery, a violation of La. R.S. 14:34. He was sentenced to 7 ½ years of imprisonment at hard labor. Clark now appeals. For the following reasons, the conviction and sentence are affirmed.

FACTS
On April 27, 2007, Johnny and Ruth Clark were at their home in Shreveport, Louisiana when the Clarks' eldest son, defendant, Roderick Clark showed up at their home. Johnny went outside to speak with Clark after he heard Clark hitting the side of the house. Clark said that he needed to come inside to use the restroom and Johnny allowed his son to come into the house. Clark had gotten into an argument with his father several days prior and this was the first time Johnny and Ruth had heard from the defendant.
After exiting the bathroom, Clark walked into the dining area to open his mail. Clark received mail at his parents home and occasionally resided there. He picked up a knife to open his mail. Although Johnny and Ruth's testimony of the sequence of events differed slightly, it is clear that at some point Clark was holding a knife and walking towards Ruth. Johnny retrieved a dining room chair to distract his son and told him to leave. Ruth was able to run out of the house and had a neighbor call the police. The police arrived, eventually arresting Clark. Johnny suffered several injuries and was taken to the hospital.
On May 16, 2007, the defendant was charged with aggravated battery. A hearing on the issue of Clark's sanity was held September 17, 2007, where he was found competent to proceed. On August 28, 2008, after a trial by jury, the defendant was convicted as charged of aggravated battery. The defendant was sentenced to 7 ½ years of imprisonment at hard labor. This appeal followed.

LAW AND DISCUSSION

Sufficiency of the Evidence
Clark argues that the evidence is insufficient to prove the charge as stated in the bill of information. Specifically, Clark contends that the testimony adduced at trial shows that the defendant had a "stick" or piece of a chair in his hand when officers arrived, but not a knife.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App. 2d Cir.01/09/08), 974 So.2d 181, writ denied, XXXX-XXXX (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La. App. 2d Cir.01/14/09), 1 So.3d 833. The *243 appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, XXXX-XXXX (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Hill, 42,025 (La.App. 2d Cir.05/09/07), 956 So.2d 758, writ denied, XXXX-XXXX (La.12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App. 2d Cir.01/14/09), 2 So.3d 582; State v. Parker, 42,311 (La.App. 2d Cir.08/15/07), 963 So.2d 497, writ denied, 2007-2053 (La.03/07/08), 977 So.2d 896.
In order to convict the defendant of aggravated battery, the state must prove that the defendant intentionally used force or violence upon the victim, that the force or violence was inflicted with a dangerous weapon and that the dangerous weapon was an instrumentality used in a manner likely or calculated to cause death or great bodily harm. State v. McGee, 37,919 (La. App. 2d Cir.12/10/03), 862 So.2d 452.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra; State v. Allen, 36,180 (La.App. 2d Cir.09/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.03/28/03), 840 So.2d 566, 2002-2997 (La.06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
Shreveport Police Corporal Benny Samuel was the first responding officer and testified at trial. As Cpl. Samuel approached the Clarks' residence, he could hear a commotion and saw Ruth standing on the front porch. A second officer arrived, and Ruth warned both officers that her son had a knife. As Ruth and the two officers entered the home, Cpl. Samuels saw Clark hitting his father on the head with a broken piece of a chair. Corporal Samuels also noticed that the room was in disarray and that a broken knife was on the floor. At trial, Cpl. Samuels described the knife as a kitchen or steak knife that was broken in half and had blood on it.
Officer Angie Wilhite of the Shreveport Police Department was the second responding officer at the scene. She observed that Ruth appeared to be nervous and that the sounds of an altercation could be heard from outside. Upon entering the home, Officer Wilhite saw the defendant hitting his father with a "stick." She used her taser gun on the defendant, then handcuffed him. Officer Wilhite saw an injury under the victim's left eye, as well as lacerations to the top of his head. Officer Wilhite recovered two knives from the scene, and she too testified that one of the knives was broken and had some blood on the blade.
Shreveport Police Detective Jeff Brown also testified at trial, describing Ruth as upset and crying. Detective Brown observed broken furniture, blood, and knives scattered about and testified that Johnny's face was disfigured and bloody.
*244 Here, the record does reflect that Clark was seen by officers beating his father with a chair leg. However, the record also established that Clark physically approached his parents in a threatening fashion with knives earlier during the sequence of events. Johnny testified that when Clark approached him with the first knife, the knife Clark used to open his mail, he and Clark struggled for some time, and eventually Johnny got the knife away. Next, Johnny explained, Clark went back towards the kitchen and grabbed a butcher knife and then acted as though he was going to attack his mother. At some point after grabbing the dining room chair, Johnny lost consciousness while being attacked. There were no other witnesses to refute Clark's use of a knife to inflict the wounds on his father. Ruth also testified that she ran from the house as Clark approached her with a knife.
In addition to the above testimony, direct evidence also established that Clark struck the victim, which Clark does not refute. Johnny's injuries included a deep cut to his face which required stitches as well as wounds to his head which were consistent with wounds inflicted with a knife. In addition, contrary to what Clark asserts, two knives were recovered at the scene, one with blood on the blade.
The record establishes that Clark had initially been armed with a knife, and the evidence supports a jury's conclusion that Clark used a knife to cut the victim and was guilty beyond a reasonable doubt of every essential element of aggravated battery as set forth by the bill of information. This assignment is therefore without merit.

Hearsay
In his second assignment of error, Clark argues that the trial court erred in that it continually, and over objection, allowed the state to offer hearsay statements. Specifically, Clark argues that the trial court erred in allowing police officers to recall what Ruth had said to them, after Ruth had already testified. Clark also argues that the trial court should not have allowed Det. Brown to recount Off. Angie Wilhite's statements.
Hearsay is a "statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. art. 801(c). Generally, such out-of-court statements are inadmissible. La. C.E. art. 802; State v. Logan, 36,042 (La.App. 2d Cir.06/14/02), 822 So.2d 657, writ denied, 2002-2174 (La.09/19/03), 853 So.2d 621. Hearsay evidence may be admissible under the exceptions provided by the Code of Evidence or other legislation, however. La. C.E. art. 802; State v. Zeigler, 40,673 (La.App. 2d Cir.01/25/06), 920 So.2d 949. If a statement is not introduced to prove the truth of the matter asserted, then that statement, by definition, is not hearsay. State v. Tate, 25,765 (La.App. 2d Cir.02/23/94), 632 So.2d 1213, writ denied, XXXX-XXXX (La.08/23/96), 678 So.2d 33.
When an investigating officer testifies concerning events which lead to the arrest of a defendant, statements made to the officer during the course of the investigation are not hearsay, if they are merely offered to explain the officer's actions. State v. Zeigler, supra. A trial court's error in admitting evidence of a testifying police officer, when such testimony arguably contains hearsay, is subject to the harmless error analysis. Id. The reviewing court must find the verdict actually rendered by this jury was surely unattributable to the error. State v. Johnson, XXXX-XXXX (La.11/27/95), 664 So.2d 94; Sullivan v. Louisiana, 508 U.S. 275, 279, *245 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).
The three testifying officers related that Ruth had been standing outside of the residence, and had informed them that the defendant, her son, was inside attacking his father with a knife. The statement by Ruth explained the officers' entry of the residence, in order to investigate the disturbance. State v. Zeigler, supra. Detective Brown testified as to Ruth's recounting of events, as well as information related to him by Off. Wilhite, when he arrived at the scene. Detective Brown's testimony explained his understanding of the events that had transpired, and subsequent investigation of the scene and was, therefore not, hearsay.[1]
Nevertheless, even if the trial court erred in admitting the testimony, reversal is mandated only when there is a reasonable possibility that the hearsay evidence might have contributed to the verdict.[2]Id. In the instant case, a review of the record clearly shows that there was sufficient evidence to support Clark's conviction, even without consideration of the questioned testimony. The officer's testimony was harmless error, if anything, in that it placed unnecessary emphasis on the fact that knives were involved, which Ruth herself repeatedly identified throughout her testimony. Omission of Ruth's statements to police, and of Det. Wilhite's statements to Det. Brown, surely would still have resulted in sufficient evidence to convict. As discussed above, direct evidence of the defendant's actions, combined with the physical evidence were sufficient to support the jury's finding that the defendant was guilty as charged. Therefore, this assignment is without error.

Exclusion of Evidence
In his last assignment of error, Clark argues that the trial court erred in preventing Clark from introducing evidence that the family was unreasonably afraid of him, which led his father to attack. Clark asserts that he wanted merely to show that the family was overwrought and fearful because of past difficulties and that the family overreacted to Clark's actions at the time of the offense.
A defendant has the right to present any and all relevant evidence bearing on his innocence unless prohibited by our federal and state constitutions, by law, or by jurisprudence. State v. Harrison, 560 So.2d 450 (La.App. 2d Cir.1990). To be admissible, the evidence must be relevant to an issue material in the case. A material issue is one which is of consequence or importance to the case. Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negate the commission of the offense and the intent. Id.; La. C.E. arts. 401, 402. Louisiana C.E. art. 103 provides in pertinent part that: "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... [w]hen the ruling is one excluding evidence, *246 the substance of the evidence was made known to the court by counsel."
The evidence was excluded by the trial court on the basis of Clark's failure to provide notice of a defense based upon mental condition, pursuant to La. C. Cr. P. art. 726. However, the substance of the testimony that Clark attempts to elicit was not proffered and therefore cannot be reviewed by this court. See McLean v. Hunter, 495 So.2d 1298 (La.1986). Nonetheless, from the record, and as Clark has argued in brief, we can deduce that the evidence would have only shed light on the victim's state of mind. As such, the evidence was not relevant to either Clark's commission of the offense or his intent. Because the evidence was irrelevant, the trial court did not err in disallowing its admission. Accordingly, this assignment has no merit.

CONCLUSION
For the foregoing reasons, Roderick Clark's conviction and sentence are affirmed.
AFFIRMED.
CARAWAY, J., concurs and assigns reasons.
CARAWAY, J., concurring.
While I concur in the ruling, I write to make clear that the defense objections to the hearsay statements of Ruth Clark's were improperly overruled. "Generally, an explanation of the officer's actions should never be an acceptable basis upon which to admit an out-of-court declaration when the so-called `explanation' involves a direct assertion of criminal activity against the accused." State v. Hearold, 603 So.2d 731, 737 (La.1992). However, from the direct testimony of Ruth Clark and the overwhelming circumstantial evidence, it was more than sufficiently established that a knife was used in the battery so that the admission of the hearsay evidence was harmless error.
NOTES
[1] We also point out that when the police arrived, the crime was ongoing according to the statements made by Ruth to the officers and could arguably fulfill the res gestae exception under La. C.E. art. 803(C)(4).
[2] We note that in Zeigler, after overruling the hearsay objection, the trial court instructed the jury that the officer's testimony "was not to be accepted as to the truth of the declaration." Zeigler, 920 So.2d at 954. Here, the trial court did not caution the jury. Furthermore, we are mindful of our reliance on Zeigler, as we do not suggest that all witness' statements can overcome the hearsay objection. See e.g., State v. Hearold, 603 So.2d 731 (La.1992)