Judgment rendered April 13, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,201-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ALVIN BRATTON                                          Plaintiff-Appellant

versus

JAMES EDWARD STEWARD,                        Defendants-Appellees
DISTRICT ATTORNEY FOR
THE PARISH OF CADDO AND
JEFF LANDRY, ATTORNEY
GENERAL FOR THE STATE OF
LOUISIANA

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 625,968

Honorable Craig Owen Marcotte, Judge

* * * * *

ALVIN BRATTON                                          In Proper Person

JAMES E. STEWART                                      Counsel for Appellee,
District Attorney                                           James Edward Stewart,
                                                                       District Attorney for the
                                                                       Parish of Caddo

TOMMY J. JOHNSON
Assistant District Attorney

JEFFREY M. LANDRY                                   Counsel for Appellee,
Attorney General                                          Jeff Landry, Attorney
                                                                       General for the State of
                                                                       Louisiana

* * * * *

Before STONE, COX, and THOMPSON, JJ.

**COX, J.**

This civil appeal arises from the First Judicial District Court, Caddo Parish, Louisiana, based on the criminal conviction of Appellant, Alvin Bratton ("Bratton"). On July 8, 1998, Bratton was convicted of second degree murder and subsequently sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. Bratton's conviction and sentence were affirmed on appeal in *State v. Bratton*, 32,090 (La. App. 2d Cir. 6/16/99), 742 So. 2d 896 ("*Bratton I*"). Now, in proper person, Bratton appeals the trial court's judgment granting an exception of no cause of action and dismissing his declaratory action with prejudice. For the following reasons, we affirm.

### FACTS

The background in this matter was outlined in this Court's earlier opinion in *Bratton I*:

> On January 20, 1995, the defendant along with Michael Cooks ("Cooks"), Justin Griffin ("Griffin"), Eric Williams ("Williams"), and Victor "Slap" Norris ("Norris") left a party to rob a house for the purpose of obtaining marijuana. The defendant and the four other individuals were members of the "Wilkinson Terrace Boyz," a gang associated with the "Rolling 60's Crips." The robbery occurred at the residence of Jamal Johnson ("Johnson") located at 3526 Darien Street in Shreveport, Louisiana. Johnson was not home at the time; however, Joseph "Joe" Frazier ("Frazier"), Carlos Bryant ("Bryant"), and Ronald Ford ("Ford") were in Johnson's house.

> When the defendant and his cohorts reached the Johnson residence, they knocked on the front door and were directed by Bryant, who knew Cooks, to go around to the back door. The defendant and his cohorts, all of whom were armed, entered through the back of the house, brandished their weapons [sic] and demanded to know where the drugs were located as Cooks placed a gun to Bryant's head. Bryant, Ford, and Frazier were taken to different rooms. A padlocked bedroom door was kicked down. The defendant and his cohorts searched the house for drugs and robbed Bryant and Ford. After someone directed Bryant to lie on the kitchen floor, he was shot five

times. Ford, who was robbed of twenty dollars, was also shot multiple times after a brief struggle. Both Ford and Bryant survived. Frazier was shot fourteen times and died. While hospitalized for their gunshot injuries, both Ford and Bryant were able to pick the defendant from a photographic [lineup] and to identify him as one of the participants in the robbery and murder.

James Ford, the brother of Ronald Ford, lived in a garage apartment behind the Johnson residence and was home at the time of [the] crime. James Ford heard the gunfire but believed it to be the sound of hammering. A motion sensor light, which James Ford had installed the day before, was triggered as the defendant and the others left the Johnson residence. James Ford saw the defendant leaving the crime scene carrying two firearms. He subsequently identified the defendant in a photographic [lineup] and at trial.

Upon learning that a warrant was out for his arrest, the defendant turned himself [into] the police. At trial, the defendant denied any involvement in the crime. He testified that he accompanied Cooks, Williams, Norris, and Griffin to Darien Street, but waited at a neighbor's house while the others went to the Johnson residence to get some marijuana. According to the defendant, he realized that the others were gone for a long period of time and decided to look for them to ensure that they were not smoking all of the marijuana without him. As he walked down Darien Street, he heard gunfire and saw his group running. Although he did not know why the others were running, the defendant joined them.

The defendant also testified about a use immunity statement he gave to the district attorney's office in which he admitted his participation in the crime. The defendant denied the truthfulness of the statement and attempted to prove that he was coerced into giving the statement by his former counsel and the district attorney's office for its use at the trial of Michael Cooks. The defendant testified that he was promised a plea bargain in exchange for his false statement.

The defense called John Michael McDonald ("McDonald"), the defendant's former counsel, and Mike Pitman ("Pitman"), a former assistant district attorney for Caddo Parish, as witnesses regarding the defendant's prior statement. Both McDonald and Pitman testified that no one asked the defendant to give a false statement. After the defendant waived attorney-client privilege, McDonald testified that the statement given by the defendant was substantially the same as the story that the defendant had told him concerning the events of January 20, 1995. Pitman testified that the defendant provided information in his statement that was outside the scope of the information

2

included in the police report. This information pertained to the identification of a participant in the crime who had not yet been identified by the police. Pitman also testified that the defendant decided not to testify at Cooks' trial, but that Cooks was nevertheless convicted of first degree murder and sentenced to death for his participation in the robbery and murder. At trial, the defendant's claim that he was not involved in the crime was further contradicted by the testimony of Eric Williams, a co-defendant. Williams testified that the defendant had a weapon and participated in the armed robbery. Williams had previously pled guilty to armed robbery for his [sic] involvement in the crime.

After the two day trial, the jury found the defendant guilty of second degree murder. The district court then sentenced the defendant to life imprisonment without benefit of probation, parole, or suspension of sentence.

In its June 16, 1999, opinion, this Court affirmed Bratton's conviction and sentence. Thereafter, Bratton filed several writ applications with this Court for post-conviction relief. On September 15, 2020, Bratton filed a petition for declaratory judgment naming James Stewart, District Attorney for Caddo Parish, and Jeff Landry, Attorney General for the State of Louisiana, as defendants.[1] Bratton asserted that his amended criminal indictment pursuant to La. R.S. 14:30.1 is invalid because he was never arraigned for second degree murder in Criminal Docket No. 196,603, and the case was not brought before a grand jury. In response, on March 29, 2021, the district attorney's office filed an exception of no cause of action.

At the hearing for the exception of no cause of action, the trial court granted the exception and dismissed Bratton's petition with prejudice. This appeal followed.

---

[1] For clarification, we note that District Attorney James Stewart's last name is misspelled in the case caption. Further, neither James Stewart nor Jeff Landry is named as Appellees within the body of Bratton's appeal.

3

## DISCUSSION

As a preliminary matter, Bratton argues that this Court should convert his devolutive appeal into a supervisory writ of review. Bratton contends that because he was granted a devolutive appeal and that he filed his petition within the time limitation for seeking a supervisory writ, this Court maintains the authority to convert his devolutive appeal into a supervisory writ of review.

We note that under La. C.C.P. art. 2088, a trial court is divested of its jurisdiction over all matters in cases that are reviewable under the appeal when the order of appeal is granted. La. C.C.P. art. 2088. Specifically, La. C.C.P. art. 2088(A) provides:

> The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal.

Here, the trial court rendered judgment on May 5, 2021, and Bratton filed a notice of intent to seek a devolutive appeal which the trial court granted on May 12, 2021, divesting the trial court of its jurisdiction over the matter on appeal.

The exercise of appellate supervisory jurisdiction is discretionary. The Louisiana Supreme Court stated:

> The Louisiana Constitution confers appellate jurisdiction upon the courts of appeal over "all civil matters" and "all matters appealed from family and juvenile courts" and supervisory jurisdiction over "cases which arise within its circuit." La. Const. art. V, § 10(A). Moreover, the jurisprudence indicates that the decision to convert an appeal to an application for supervisory writs is within the discretion of the appellate courts.

4

*Stelluto v. Stelluto*, 05-0074 (La. 6/29/05), 914 So. 2d 34. Because the trial court is divested of its jurisdiction in this matter and we maintain the discretion as to whether we grant supervisory writ, this Court, after consideration of the matter, declines to convert this appeal to an application for a supervisory writ. Further, we do not find that irreparable injury would occur if Bratton's assignments of error are not disposed of by supervisory review.

*Exception of No Cause of Action*

Taking together, Bratton's assignments of error contend, in sum, that the trial court abused its discretion in granting the State's exception of no cause of action and in dismissing his declaratory action with prejudice.

Bratton asserts that the trial court dismissed his declaratory judgment and failed to grant him a time in which to amend his petition[2] to state a valid cause of action, in part because it mistakenly confused the State's exception of no cause of action with an exception for a no right of action. Bratton further argues that because the State filed an exception of no cause of action, he was not required to plead the theory of his case, and the State had the burden to prove he failed to state a cause of action. He contends that the State failed to meet this burden because it did not "factually present any legitimate reason why [his] petition did not state any valid cause of action as to the validity of the original bill of indictment. . . Nor did the State [sic] establish that the original bill was in fact valid."

---

[2] We note, however, that Bratton never requested time in which to amend his petition.

Bratton alleges that the original bill of indictment, which charged him with first degree murder,[3] was not a "valid statutorily returned bill by [a] grand jury." As such, his amended bill of indictment is invalid because the original bill of indictment was filed on March 23, 1995, and the amended bill was not filed until three years later on July 6, 1998. Bratton asserts that this factual allegation, as pled in his petition, provided a sufficient cause of action upon which the trial court could have granted his declaratory judgment. Moreover, because the State failed to prosecute him for the amended bill within the statutory time frame, the trial court was obligated to declare his rights on the face of the pleading. We disagree.

The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the plaintiff's petition by determining whether the law affords a remedy on the facts alleged in the petition. *Pesnell v. Sessions*, 51,871 (La. App. 2 Cir. 2/28/18), 246 So. 3d 686; *Billot v. Billot*, 52,391 (La. App. 2 Cir. 11/14/18), 262 So. 3d 401. The exception is triable on the face of the petition; and, for the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true and any doubt is to be resolved in favor of the petition. *Pesnell*, *supra*; *Billot*, *supra*; *Fink v. Bryant*, 01-0987 (La. 11/28/01), 801 So. 2d 346; *Robertson v. Caddo Parish*, 36,540 (La. App. 2 Cir. 12/11/02), 833 So. 2d 1139, *writ denied*, 03-729 (La. 4/23/04), 870 So. 2d 284;

---

[3]The record, in this case, provides that the original bill of indictment, by which Bratton's case was consolidated with the original defendants in *Bratton I*, was dated March 23, 1995, and charged each defendant with first degree murder. Thereafter, Bratton's trial was severed and the bill was subsequently amended on July 6, 1998, to reflect that Bratton was charged with second degree murder based upon the findings from the original grand jury verdict.

*Johnson v. City of Coushatta*, 46,914 (La. App. 2 Cir. 1/25/12), 86 So. 3d 32.

A petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. *Fink, supra.* In reviewing a trial court's judgment sustaining an exception of no cause of action, the reviewing court should subject the case to de novo review because the exception raises a question of law and the lower court's decision is based solely on the sufficiency of the petition. *Robertson*, *supra*; *McCoy v. City of Monroe,* 32,521 (La. App. 2d Cir. 12/08/99), 747 So. 2d 1234, *writ denied,* 00-1280 (La. 03/30/01), 788 So. 2d 441.

After de novo review of the record before us, we find that the trial court did not err in determining that Bratton failed to state a cause of action. In his petition, Bratton contends that the district attorney is liable because it obtained a conviction against him under an unlawful indictment. Bratton argues that the indictment was invalid because the State failed to timely institute prosecutorial action against him in the three years since his original bill of indictment was filed on March 23, 1995, and the amended bill of indictment was filed on July 6, 1998. Although pled in an action for declaratory relief, Bratton's prayer for relief primarily challenges the validity of his indictment, its proceedings, and ultimately his conviction and sentence; such relief, however, is not properly resolved through declaratory judgment.

A declaratory judgment action provides a method by which a court may "declare rights, status, and other legal relations whether or not further relief is or could be claimed." La. C.C.P. art. 1871. Declaratory judgment is

7

an appropriate means of testing the constitutionality of a statute or applicability of an ordinance in which there is an actual controversy between the parties. *Robertson*, *supra*. It is available to test the validity of a criminal ordinance where a criminal prosecution has not yet begun. Although courts are vested with wide discretion in deciding whether to grant or refuse declaratory relief, *Louisiana Supreme Court Committee on Bar Admissions ex rel. Webb v. Roberts,* 00-2517 (La. 2/21/01), 779 So. 2d 726, our courts have consistently held that declaratory relief is available to decide a justiciable controversy, such that it is a presently existing, actual, and substantial dispute, but the courts are not empowered to render advisory opinions on moot or abstract issues of law. *Robertson*, *supra*.

In accepting the allegations in Bratton's petition as true, and in applying the legal principles for the exception to the facts of this case, we find that the trial court properly granted the State's no cause of action. Because Bratton challenges the validity of his conviction and sentence by way of his indictment, the proper procedure for him to assert this challenge, if available, is by motion for post-conviction relief under La. C. Cr. P. art. 903.3,[4] rather than a civil proceeding.

---

[4] La. C. Cr. P. art. 930.3 sets forth the grounds for post-conviction relief as follows:

> (1) The conviction was obtained in violation of the constitution of the United States or the state of Louisiana. (2) The court exceeded its jurisdiction. (3) The conviction or sentence subjected him to double jeopardy. (4) The limitations on the institution of prosecution had expired. (5) The statute creating the offense for which he was convicted and sentenced is unconstitutional. (6) The conviction or sentence constitute the ex post facto application of law in violation of the constitution of the United States or the state of Louisiana. (7) The results of DNA testing performed pursuant to an application granted under Article 926.1 proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.

Bratton further argues that the trial court abused its discretion in failing to grant him an opportunity to amend his pleadings as he could have offered evidence other than verified pleadings to state a valid cause of action. We disagree.

La. C.C.P. art. 934 provides that when the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. However, if the grounds of the objection raised through the exception cannot be removed, the action, claim, demand, issue, or theory shall be dismissed. The decision to allow an amendment of a pleading to cure the grounds for a peremptory exception lies within the discretion of the trial court. *Robinson v. Allstate Ins. Co.*, 53,940 (La. App. 2 Cir. 5/26/21), 322 So. 3d 381. Appellate courts have concluded that art. 934 does not require a court to give leave to amend a petition if doing so would be futile, meaning if it is apparent that the defect could not be corrected by amendment. *Hardy v. Easterling*, 47,950 (La. App. 2 Cir. 4/10/13), 113 So. 3d 1178.

We note that even if the trial court permitted Bratton to amend his pleadings, declaratory judgment would not appropriately terminate the controversy involved under the facts of this case because the matter is better suited for an application for post-conviction relief subject to the time delays for filing pursuant to La. C. Cr. P. art. 930.8. Whether Bratton can seek timely post-conviction relief is not properly before this Court for review and will not be considered. Accordingly, we find that Bratton has failed to state a cause of action for declaratory judgment.

**CONCLUSION**

9

For the reasons expressed, the judgment is affirmed.  Appellate costs are assessed to Bratton.

**AFFIRMED.**